EASTERN DIS.
*March*, 1833.

SAME CASE.

MATHEWS, J. delivered the opinion of the court.

MORAND'S
HEIRS
*vs.*
MAYOR, ETC. OF
NEW-ORLEANS.

The principal questions in this case have already been settled by a judgment of the appellate court, rendered in June term, one thousand eight hundred and thirty-two. That judgment was in affirmance of the one rendered by the District Court, which adjudged to the defendants all the land which they held and possessed, under a title from Claud Tremé and his wife, their immediate vendors. The act of sale under which Tremé and wife acquired title, describes the property sold (which was a tract of land) by limits, and is consequently a sale *per aversionem*. The tract thus purchased, was composed of several distinct tracts, or parts of them, which originally belonged to the ancestor of the plaintiffs, Charles Morand, sen., and was adjudicated to his son Charles, at the sale of his succession, by quantity, not by fixed limits. The dispute between the present parties, relates solely to one of those original tracts, that is known by the name of the Brick Yard, which is situated on the left hand side of the road leading from the city to the bayou St. John, and which was described in the adjudication to Charles Morand, the son, as having about seven arpents in depth, running from the city, on, or parallel with the bayou road. He afterwards sold it to Paul Moreau, under the following description: " *Una tiérra de como diez arpanes de frente a la ciudad sobre el fundo de siete que corren sobre el camino del bayou de San Juan, &c.; lindada de un lado a la tiérra de dos arpanes pertenentes a Dn. Louis Docmini, y del otro a la ciudad,*" &c. The limits thus given embrace considerably more than seven arpents in depth, extending to the tract of land which formerly belonged to Doquemenil Morand, now the property of Griffon. As Charles Morand, the seller to Moreau, had acquired no title to any land beyond seven arpents in depth, running from the city, by the adjudication of his father's succession, it is clear that he could not legally convey any to his vendee. The land beyond these seven arpents, and

·Eastern Dis.
March, 1833.

MORAND'S
HEIRS
vs.
MAYOR, ETC. OF
NEW-ORLEANS.

extending to the limit of Griffon's plantation, is now the only remaining subject of dispute between the parties to this action, and it offers a single question for solution; that is, whether Moreau, and those claiming under him, have acquired title by prescription. Two kinds of prescription are relied on by the defendants, *longe and longissime temporis.* The facts of the case would perhaps not fully support the latter, notwithstanding a possession, or occupancy and use of part of the premises, since the year one thousand seven hundred and seventy-five, until the commencement of the present suit in one thousand eight hundred and thirty. We are however of opinion, that the defendants have a right to the benefit of the former.

For the prescription of ten and twenty years, there must be an uninterrupted, *bona fide* possession, and a title translative of property or a contract or deed under which the party is put in possession. To give effect to the prescription of ten and twenty years, three things are required by our laws. A just title, possession and good faith. The leading principles of the Spanish laws, which govern the present case, do not differ materially from the French. The systems of jurisprudence of both countries, it is believed, are mainly founded on the Roman Civil Law. In relation to the three requisites above stated, as necessary to give title by prescription, we do therefore refer principally to the definitions and doctrines found in Pothier's treatises on possession and prescription, these subjects being therein treated in a perspicuous manner, with copious references to the laws on which the doctrines of the author are based.

A just title of possession, is one translative of property or a contract or deed, in consequence of which any person is put in possession of a thing. *Pothier Prescription, no.* 57. Titles of this nature are of various kinds as *pro emptore, pro herede, &c.* In the present case, the defendants claim the benefit of a title *pro emtore,* and the main basis of their claim is the act of sale from Charles Morand, the son, to Paul Moreau, passed on the 25th April, 1775. We have already transcribed from this deed, the clauses relating to the description of the property sold. By these extracts from the act of sale, the description of the land gives the depth of seven arpents, running on a parallel with the road of the

EASTERN DIS.
*March*, 1833.

MORAND'S
HEIRS
*vs.*
MAYOR, ETC. OF
NEW-ORLEANS.

bayou St. John. But it also gives as a limit in the rear, the land of Doquemenil Morand, now the plantation of Griffon. Under this description, and with a knowledge of the *locus in quo*, as it was situated in relation to the adjoining plantations, which the vendor and vendee may be presumed to have possessed, the latter may well have considered that he was buying a tract of land according to limits, and not agreeable to quantity; the price paid being a total and fixed sum for the whole tract, and not so much per arpent; and that the seller intended to sell the whole tract, back to the land of Doquemenil Morand, cannot be doubted. The entire tract having been sold by limits, for a whole and definite price; these circumstances must control the problematical description as to quantity, and give to the sale the character of one *per aversionem*. 4 *N. S. p.* 428.

The sale of an entire tract of land by limits for a whole and definite price is sale *per aversionem*, and the circumstances control a problematical description of quantity.

This title was clearly translative of property to the whole extent of the limits given in the act of sale, and the evidence shows that the vendee took possession under the sale, and although the record affords no proof of a formal delivery to him of the thing sold, yet neither is there any evidence that the possession assumed was contrary to the will of the vendor. It must, therefore, be considered as a civil possession *pro emptore*, extending over the whole of the tract of land, as sold by limits. In order, however, that title by prescription might grow out of this possession, it is necessary that it should be *bona fide*, and uninterrupted during the time required to prescribe.

Against the good faith of the possessors in the present instance, the plaintiffs rely on that part of the act of sale, which states the manner in which the vendor had acquired title to the property sold, wherein it is declared that he acquired it by adjudication of the property which belonged to his father, and which was sold at public sale, &c. By that adjudication, it is contended that the purchaser acquired title to only seven arpents in depth, and consequently if his vendee had used ordinary precaution and diligence, he would have discovered that the person from whom he bought had no title beyond these seven arpents. Except this reference in the act of sale, from Charles Morand to Paul Moreau,

EASTERN DIS. *March,*1833.

MORAND'S HEIRS

*vs.*

MAYOR, ETC OF NEW-ORLEANS.

there is no proof showing that the latter knew the defect of the title of the former; and this is a simple statement, that the tract of land sold, had been acquired by adjudication at public sale of the succession of Charles Morand, the elder, without indicating any place where the notarial proceedings might be found. In this respect the pretensions of the plaintiffs rest on a foundation weaker than that relied on by *Fletcher's heirs,* in their suit, vs. *Cavalier, et. al.* For in that case, the reference to the original title under which the defendants held, indicated the notarial office where it was to be found; it was deficient in the formalities required by law, and consequently did not afford evidence of a title justly translative of property. That case is clearly distinguishable from the one found in 2 *N. S. p.* 618, and the distinction is made evident by the last opinion pronounced in Fletcher's case, wherein it was held, that the means indicated of obtaining knowledge of facts, is not equivalent to actual knowledge. We perceive no good reason to consider the doctrine thus established, as erroneous, nor is it impugned by that laid down in the case cited from 4 *N. S. p.* 224.

The good faith which ought to accompany possession is defined by Potheir to be, *justa opinio quæsiti dominii.*

Paul Moreau might fairly (according to the limits given in the sale to him,) have entertained the belief, that he acquired title to the tract of land sold as far as the boundary of the plantation now owned by Griffon, there being no evidence to show that he knew that any part of it belonged to any other person at the time when he took possession under the sale; nor is there any testimony showing that the good faith which commenced with his possession, ever afterwards ceased to operate on the minds of those who succeeded to his rights, either by titles, universal or particular, down to the present defendants. The possession under the title to Moreau being what is denominated a civil possession, extended over the whole tract sold, according to the limits specified; and the testimony of the case shows that he and those claiming under him, fenced and used the land along the bayou road, to the line of Griffon's plantation. See the testimony of Melin, Pegeau, Griffon, Lambert, Ducourdeau, and others.

EASTERN DIS.
*March*, 1833.

MORAND'S
HEIRS
*vs.*
MAYOR, ETC. OF
NEW-ORLEANS.

But it does not suffice to acquire title under the law of prescription that the possession of property should be under color of title, and in good faith. It must also be continuous or uninterrupted during the whole time required to be completed to operate a title.

The only pretence of interruption in the present case is given by the circumstance of a fort being placed in a situation which required the shot from the cannon to pass over a part of Moreau's tract of land. The site of this fort was not on any part of the ground now in dispute; nor is it pretended that the guns bore directly on the dwelling of the possessor, or that he was necessarily removed from his habitation. So long as he occupied any part of his plantation, his civil possession extended over the whole. We do not believe that the mere circumstance of a man's land being so situated in relation to a fortification, as to require the balls from the guns to pass over it, ought to be considered as an interruption of possession. It certainly cannot be classed under the head of civil interruptions. And it seems to us to be a use of the thing, or temporary servitude on it, not incompatible with the possession of the person who has just cause to believe himself the proprietor, and is, therefore, not what may be considered as a natural or actual interruption.

So long as a person occupies a part of his plantation, his civil possession extends over the whole.

The situation of a tract of land so that the balls from the guns of a fort must pass over it, is insufficient to interrupt possession.

We, therefore, conclude that the defendants, and those under whom they claim, and from whom this title has been regularly derived, have had open, peaceable and uninterrupted possession under a title *pro emptore.* And the only question which remains to be settled is, whether this possession has continued a time sufficient to acquire a title to the premises in dispute, by the prescription of ten and twenty years. The plaintiffs are descendants from four branches, whose stock was Charles Morand, senior, being his children, three sons and a daughter. The evidence shows that all these, the children of Morand, the elder, lived more than twenty years after they became of age; consequently, the prescription *longi temporis* had its full effect before their deaths.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.