Avery v. Allain and another.

---

WILLIAM H. AVERY *v.* JULIEN ALLAIN and another.

A plaintiff who holds under an act of sale which expressly declares that the vendor sells only such rights as he has to the property, and that the vendee has a knowledge of his title thereto, has not acquired such a just title, translative of property, as will serve as s basis for the prescription of ten years.

Where one, who sells all the rights, claims, or privileges he has or may have to a second concession in the rear of a front tract, without warranty, or stipulation to make a title, subsequantly becomes the owner of part of the land in the rear, by purchase from a third person holding under another title, he may hold, against his vendee, the property thus acquired by him. *Per Curiam :* To hold him bound to make the title of his vendee good, would be to enforce a warranty of title, where none was intended to be given.

APPEAL from the District Court of Iberville. *Deblieux*, J.

GARLAND, J. The plaintiff claims to be the owner and possessor of a tract of land of twelve *arpents* front on the Mississippi river, by a depth of eighty *arpents*, with lines opening to the rear ten degrees. The defendants aver that they are the owners and possessors of a tract of twenty *arpents* front on the *bayou* Manchac, with a depth of forty *arpents*. The distance between the two rivers not being one hundred and twenty *arpents*, the claims conflict with each other in the rear, and about seventy-seven and 11-100 acres are in dispute. Both parties claim them by virtue of their titles, and also by possession and the prescription of ten years.

The documents in the record do not make out a complete claim of title in the plaintiff to any part of the land; but it is admitted by the defendants, " that the plaintiff has a regular chain of titles from the original *requête* of Pierre Allain, *fils*, derived from the government, on the 2nd of July, 1787;" and it is also admitted by the plaintiff, " that the defendants have a regular chain of titles from the original one produced, obtained from the Spanish government."

It appears from some recitals in one of the acts, that in the year 1774, Pierre Allain, *père*, obtained from the Spanish governor, Unzaga, a concession for seven *arpents*, twenty-five toises, and five feet front on the Mississippi river, by the depth of forty *arpents*. On the 5th May, 1787, Pierre Allain, *fils*, presented a petition to governor Miro, asking for a grant of land, in the rear of his father's tract, of forty *arpents* in depth, with a front on his rear line, and opening in the same manner as the side lines of the front tract. At the foot of this petition the governor answered: " No ha lugar esta petition, respeto a que la segunda profundidad no se concede, sino al proprietario de la primera, y aunque el padre lo permita, puede ser con el tiempo motivo de disputas y discenciones." On the 10th of July, 1787, Piere Allain, *père*, sells to his sons, Simon and Pierre, each one half of his front tract of land with the depth of forty *arpents*, and to Pierre alone the " seconde concession dans la profondeur, sur les même lignes de toute la face de cette sus-dite, pour le prix et somme de cent piastres, qu'il declare avoir recu comp-

tant, s'obligeant de lui .... les titres en forme, à sa requisition."
On the 31st of January, 1791, all the parties to the last men-
tioned act agreed to change or modify it, and did so, by sub-
stituting a sale from the father to Simon Allain for four *arpents*
front on the river, on the upper part of the tract, by eighty in
depth, between parallel lines; and to Pierre Allain, *fils*, the re-
mainder of the tract, (" le reste entier de la terre,") with all the
opening or divergence of the lateral lines to the depth of eighty
*arpents*, " *avec l'éventaille entiere jusqu'a quatre-vingt arpents.*"

By some acts or conveyances, not stated in the record, it seems
that the widow of Simon Allain became the owner or possessor
of five *arpents*, twenty-five toises, and five feet front of the tract
said to have been granted by Unzaga, in 1774; and in May,
1819, her heirs sold that much front, by forty *arpents* in depth,
to Carlos De Armas; and, in 1826, by another act under pri-
vate signature they said that at the sale in 1819 it was under-
stood that all their rights, pretentions and claims to the
double depth were sold with the front tract; but there is no
warranty of the title nor consideration other than the original
price. In November, 1828, Janvier Allain sold to Carlos De
Armas a tract of land of three *arpents* front on the river, by
forty in depth, with a certain opening in the side lines of the
first concession, together *with all the rights, claims and privi-
leges he has, or may have, to the second concession,* which it is said
had been purchased from the United States.

Several acts of sale, exchange, and partnership were subse-
quently passed between Carlos De Armas, Christoval G. De
Armas and Felix De Armas, in all of which the parties seem
to have had some doubt as to their title to the back land, as in
some of them no warranty is given, until by an act passed on
the 11th of February, 1832, from Carlos De Armas to P. Du-
bertrand, the title to the whole tract of twelve *arpents* front by
eighty in depth, with a greater opening to the rear than most
of the acts called for, was finally vested in him. In this sale it
is said, that Dubertrand *has knowledge of the titles to the planta-
tion;* and further, that it is understood that the general war-
ranty given by the act does not apply to the double concession,
but only to *all the vendor's rights to the same.*

On the 29th of December, 1834, Dubertrand, by an authentic .act, sold the whole land, with a general warranty, to the plaintiff and one John G. Banks, whose half plaintiff subsequently purchased. In the sale from Dubertrand, although there is a general warranty of title, there is a clause which says, "that in case of eviction of any part of the said land, Dubertrand promises to purchase back said part from the successful claimant, and to reinstate the purchasers in full possession thereof, or to pay them the value of the same, with all damages."

There is no evidence that the titles under which the plaintiff claims have ever been recognized or confirmed by the United States, except so far as relates to the back land bought of Janvier Allain, (and that is imperfect,) which does not appear to interfere with the defendants' pretensions, except for the quantity of six and 61-100 acres. No confirmation by Congress or the commissioners is shown, nor any location or survey under .either the Spanish or American government, of the front or back lands. The parol testimony shows that old lines were found in the woods, but by whom made, or for what purpose is not explained, nor is the time of marking them proved. Some fifteen or twenty acres were cleared in the rear of the first forty *arpents* when the plaintiff purchased the plantation of Dubertrand; but this clearing does not include any part of the land in dispute.

The defendants set up title under two orders of survey, made by the governor of the province of Louisiana, both dated the 30th September, 1793; one to Joseph Richard, for fifteen *arpents* front on the bayou Manchac, with a depth of forty *arpents*, and the other to Santiago McCullock, for eight *arpents* front on the same bayou, with the ordinary depth. Each of these claims was located and surveyed in December, 1797, by Miguel Walsh, authorised for that purpose by Carlos Trudeau, surveyor general of the province, and plats signed by him are in the record. These titles passed through different persons to one James Jones, in whose name they were presented to the United States commissioners, and confirmed by them, on the titles and proof of cultivation and habitation. From Jones twenty *arpents* front of these two tracts have, by various probate and sheriffs'

sales, and other conveyances, become vested in the defendants, by a sale from Janvier Allain, dated the 21st day of January, 1832; and under that and the preceding titles, they say that they have a better title than the plaintiff to the land in controversy, and also claim to hold it by the prescription of ten years.

The claim of Jones was regularly surveyed and located in May, 1840, by a United States surveyor, and his operations were approved by the surveyor general.

The parol testimony shows that Janvier Allain settled on the land in 1828, soon after he purchased it, and that he remained for several months, when he was driven off by high water. He returned again after the waters subsided, remained some time, and left it. Santiago McCullock also lived on the land under the Spanish government; and the defendants have, since their purchase, frequently exercised acts of ownership, by going on the land, remaining there at work, with their slaves, for a considerable time, and by cutting down and carrying off timber. The plaintiff, as far back as 1838, went on the land in dispute, and at various times cut wood and timber on it; and Roth, one of the defendants, in 1838, whilst acting as overseer of the plaintiff, took firewood and timber from it, as being his (plaintiff's) land.

The District judge gave a verdict for the plaintiff, principally on the ground of his having acquired a right to the whole depth of eighty *arpents*, by the prescription of ten years, based on the sale from Carlos De Armas to Dubertrand, on the 11th of February, 1832, under which title the plaintiff claims. From this judgment the defendants have appealed.

We concur fully in the opinion expressed by the court below, that Pierre Allain, *fils*, acquired no title from the Spanish authorities, by the presentation of his petition to Governor Miro. That functionary says, in express terms, that he cannot grant the land, as no one is entitled to ask for it but the proprietor of the first or front concession; and even if the father of the applicant consented to the grant, it would not be prudent to give it, as it might lead to future difficulties. Pierre Allain, *père*, never applied to the Spanish government for a title to the land back of his front tract, nor did either Simon, or Pierre Allain, *fils*, ever

make such application, after they purchased from their father; consequently, none of them show any title out of the sovereign. By the usage and regulations in force in the province of Louisiana, the back lands, to the extent of forty *arpents*, were often granted to the proprietors of the front tracts; but no title vested in consequence of this usage, unless the lands were asked for and conceded by the proper authority. These parties having no title themselves, could not sell more than they had, which was a mere right of possession.

Upon the possession obtained, as above stated, the plaintiff contends that he has acquired a title as against the defendants, by the prescription of ten years, based on the sale from Carlos De Armas to Dubertrand, dated the 11th of February, 1832, this suit having been instituted on the 15th day of April, 1842, being about ten years and two months; and so the court below decided. In this we think there is error. In the sale from Carlos De Armas to Dubertrand, the latter acknowledges that he has full information as to the titles to the property, and that the stipulation of general warranty is not to apply to the back lands, but only to convey the personal rights of the vendor. This is, in effect, only a sale of all the rights, title and interest of Carlos De Armas, and presents the same question as was decided in the case of *Eastman, Syndic, &c, v. Beiller* (3 Robinson, 221). There the vendor gave only a warranty against himself, his heirs, and those claiming under him; and that, we said, was not such a just title, translative of property, as the plea of prescription of ten years could be based on, if the title should prove defective. The fact of a vendor refusing to guaranty the title he sells, is a circumstance calculated to excite suspicion as to its validity, and should put a vendee on his guard, and induce him to make inquiries as to it. This effect, it appears, was produced on Dubertrand, who admits that he had full information as to the title, and took possession under it as it was.

Besides the entire want of title to the back lands emanating from the Spanish authorities, no claim has been set up against the United States, for the lands in the rear of the tract of five *arpents*, twenty-five *toises*, and five feet front on the river, sold by the

heirs of the widow of Simon Allain to Carlos De Armas, either on the ground of being entitled to it by a concession from the Spanish government, or as being entitled to it under any of the laws passed by Congress, giving to the front proprietors a preference in purchasing the lands back of their front tracts at the minimum price of the public lands. We, therefore, must presume that the land forms a part of the public domain. It also may be questionable, if we were to assume that the plaintiff is the owner of a quantity of land back of his front tract equal to the quantity in said front tract, which is all he can be entitled to under the acts of Congress, whether there will be any interference of the back lines at all.

The plaintiff's counsel further insist, as Carlos De Armas purchased three *arpents* front of the tract of land sold to Dubertrand of Janvier Allain alone, and of him and Simon Allain, as two of the heirs of the widow of Simon Allain, that, therefore, when they became respectively the owners of the land now claimed by the defendants, the plaintiff was entitled to take out of the newly acquired land sufficient to make up the deficiency in that sold, if it should arise from an interference of the land newly acquired. This argument, at first, seemed to have much force; but, upon examination, we do not think it sound. Janvier Allain only sold to De Armas such right, interest and pretension as he might have to the lands back of the front tract, without warranty, or any stipulation to make a title. He sold such rights or pretensions as he might have under a particular act of Congress; but never promised that he would not purchase any other land adjoining it held under another title, and that if he did, and there should be an interference, that then he would make the first right good by ceding to it the full quantity out of the second right acquired. This would, in effect, be a warranty of title, when none was intended to be given. Janvier Allain did not sell to Carlos de Armas any particular quantity of land in the rear of the front tract, but only such quantity as he might be entitled to there. Now, previously to this sale, the United States had confirmed to Joseph Richard and McCullock, the title to their respective tracts of land, and thus re-

linquished all title to the land within the limits of those titles, and could not sell the same to Janvier Allain, or any other person.

As to the land back of the tract acquired from the heirs of the widow of Simon Allain, the relinquishment of the heirs, in 1826, to Carlos De Armas, is weaker than the transfer of Janvier Allain to him. The reasoning applicable to that transfer applies, therefore, with more force to this. Simon, and Janvier Allain are two of the heirs of Madame Simon Allain, and if the doctrine of the plaintiff's counsel be correct, then the two Allains would only be liable for portions as such heirs, and consequently only bound to make up or give the plaintiff such portions of any deficiency in his quantity out of their subsequently acquired land; and this they would be bound to do upon the principle of being in some way warrantors, whilst their co-heirs, who are as much bound as they are by the act under private signature, passed in 1826 to Carlos De Armas, are not bound for any thing at all. Thus two heirs, from the fact of becoming proprietors, subsequently to their transfer, of conti guous lands, would become warrantors, and the others not.

It is ordered, that the judgment of the District Court be reversed, and ours is in favor of the defendants, as in case of non-suit, with costs in both courts.*

*De Armas, Lockett* and *Micou,* for the plaintiff.

*Labauve,* for the appellants.

---

* *Micou,* for the plaintiff, for a re-hearing. The question is, not whether the plaintiff's title is good against all the world, but whether the vendor himself can disturb the possession of his vendee, on the pretence, that the title which he has given is defective. The question has nothing to do with the law of warranty. The expression, that "the law implies a warranty against the acts of the vendor himself," is frequently and familiarly used, but does not clearly express the idea intended to be conveyed. A warranty is properly an engagement of one person, to protect another against the acts of a third. A warranty against the acts of the person granting, is superfluous. Whether such warranty is express or not, both law and justice forbid the grantor to disturb the title he has given—to destroy his own work, to the prejudice of his grantee.

Had Avery been evicted by a third person, he might have no recourse in warranty against his vendors, because they refused to warrant his title; or, if they had warranted, they would be held bound only in proportion to their interest on the property sold. But this rule has no application when the vendors themselves attempt to disturb the title they have given. They all joined in the sale

of the whole estate, without separating their interests. Each was vendor *par mie et par tout*. Each of them, by selling, imposed upon himself, his heirs and successors, the obligation of respecting the title he had given. "Although it be agreed that the seller is not subject to warranty, he is, however, accountable for what results from his personal act, and any contrary agreement is void." Civil Code, art. 2480. Where a vendor, having sold by a defective, afterwards acquires a perfect title, the acquisition of the new title will enure to the benefit of the purchaser. 12 La. 170. The vendor could not use the new title, because the law prohibits him from disturbing the possession he has given. If ten *arpents* be sold by a defective title and without warranty, and the vendor afterwards acquires an *arpent*, the title of his vendor is secured to the extent of his acquisition. It follows, that the plaintiff's action must be maintained. If the defendants have a title acquired either since, or before, the sale to plaintiff's vendors, that title passed to the plaintiff. If they have no title at all, they are mere trespassers, and the judgment of the court below must be confirmed.

With regard to the possession of the plaintiff, and its extent, it is admitted of record, that the plaintiff holds under a continuous chain of title from the *requête* of P. Allain, *fils*, in 1787. It was shown by the acts offered in evidence, that the Allain family possessed the back concession for many years, until they at last sold to De Armas. The title to the back concession is informal and defective, but nevertheless it was treated by the Allains as a title; they must be supposed to have possessed by lines in accordance with it; and the possession of De Armas, and of the plaintiff, must be considered in the same light. Such being the relation of the parties, mere civil possession, independently of the acts of ownership, is sufficient to establish the rights of the vendee against the vendor.