(107 So. 569)

No. 25354.

CLAYTON et al. v. RICKERSON.

(March 1, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Adverse possession ⬅71(3)—Prescription; objection that deed in defendant's chain of title was void was immaterial, where defendant claimed as vendee in good faith by prescription of 10 years.**

Objection that deed in defendant's chain of title was void, because property had been purchased by administrator at his own sale, was immaterial, where defendant claimed as vendee in good faith by prescription of 10 years.

2. **Adverse possession ⬅84 — Prescription; vendee in good faith may plead prescription of 10 years when vendor assumes to sell, without title or disclosure of defects in title.**

When vendor assumes to sell without title, or disclosure of defects in his title, vendee in good faith, though holding a non domino, may plead prescription of 10 years, but case is different where vendor sells only his right, title,

or interest and declines to give a general warranty, and sets out or shows kind of claim, title, or interest he conveys, and brings home to his vendee a knowledge of his title.

3. **Adverse possession ⬅70 — Prescription; title must be apparently good to become basis of prescription of 10 years.**

Title must be apparently good to become basis of prescription of 10 years, and of a kind calculated to induce belief in possessor that it is perfect.

4. **Adverse possession ⬅70—Prescription.**

Title, on face of which some defect appears, cannot be a basis for prescription.

5. **Adverse possession ⬅70, 84—Prescription; possessor's good-faith and legally sufficient title are essential to prescription (Civ. Code, art. 3479).**

Good faith on part of possessor, and title which shall be legally sufficient to transfer property, are essential elements of prescription, in view of Civ. Code, art. 3479.

6. **Adverse possession ⬅13—Prescription; defendant in bona fide, actual, continuous, and uninterrupted possession of property for more than 10 years prior to institution of suit, held entitled to plead prescription of 10 years (Civ. Code, arts. 3451, 3481, 3484, 3485).**

Defendant, who had been in actual, continuous, and uninterrupted possession of property for more than 10 years prior to institution of suit, as purchaser in good faith, under a title translative of property, and without a defect upon its face, *held* entitled to plead prescription of 10 years, in view of Civ. Code, arts. 3451, 3481, 3484, 3485.

7. **Wills ⬅144.**

Legatees acquired no interest in property bequeathed to them under nuncupative will, witnessed by only four witnesses, in view of Civ. Code, art. 1581.

8. **Descent and distribution ⬅74—Succession.**

Legal heirs inherited no interest in decedent's property, where his entire estate was sold to pay debts.

Appeal from Second Judicial District Court, Parish of Webster; J. E. Reynolds, Judge.

Proceeding by Hallie Clayton and others against J. A. Rickerson. From an adverse judgment, plaintiffs appeal. Affirmed.

L. K. Watkins, of Minden, for appellants.

R. F. Langston, of Minden, and Smitherman, Tucker & Mason, of Shreveport, for appellee.

LAND, J. John Chapman acquired the E. ½ of the N. E. ¼ of section 20, Tp. 18, R. 8, Webster parish, from Thomas Woodard, by act of sale of date June 28, 1865.

Woodard acquired title from Geo. W. Peterson, original patentee, by act of sale of date June 27, 1855.

Petitioners are the great grandchildren of John Chapman, and the sole surviving children and heirs of Nancy J. Heflin, wife of Eugene Clayton. Petitioners' mother is the daughter of Elizabeth Heflin, one of the seven children of John Chapman, deceased. They aver that defendant is in possession of this property, claiming to be its owner, but that he is not a possessor in good faith, and seek to recover the ownership of said land, as the heirs of their mother and grandmother, alleged to be the legatees of same, under the last will and testament of John Chapman, their grandfather.

In the alternative, petitioners claim a fifth interest in said property, by representation through their mother, Nancy J. Heflin, the daughter of Elizabeth Heflin. The discrepancy as to the interest claimed by petitioners, one-fifth, when John Chapman left seven children, evidently arises from an error in the petition as to the number of heirs surviving the great-grandfather of claimants.

The land in controversy was sold in the succession of John Chapman at public auction to John Boyet, then administrator, on January 28, 1879, and was conveyed by him to William B. Parham on January 24, 1881.

The same property was acquired by Miss Sissie Parham from the heirs of William B. Parham by act of sale of date ——— day of December, 1903.

J. A. Rickerson, defendant herein, purchased this property from Miss Sissie Parham for a cash consideration of $200 on December 31, 1904.

Defendant has pleaded the prescription of 10 years' acquirendi causa. This plea was maintained by the trial judge, and plaintiffs' demands were rejected.

[1] 1. The contention of plaintiffs that the deed from Boyet to Parham was a nullity, and therefore conveyed no title under the law prohibiting an administrator from purchasing at his own sale, is without merit, as defendant claims title as a vendee in good faith by the prescription of 10 years.

[2, 3] It is immaterial whether Boyet's title to this property was a nullity, or whether he had any title at all. It is likewise unimportant that the title transferred by the heirs of William B. Parham to Sissie Parham may have been defective upon its face. Even if Boyet and the heirs of William B. Parham were in bad faith, it is well settled by the textual provisions of the Civil Code and the decisions of this court that:

"When the vendor assumes to sell without title, or a disclosure of the defects in his title, the vendee in good faith, though holding a non domino, may plead the prescription of ten years."

"But the case is different, where the vendor sells only his right, title, and interest, and declines to give a general warranty, and sets out or shows the kind of claim, title, or interest he conveys, and brings home to his vendee a knowledge of his title."

"It is well settled, that to become the basis of that prescription the title must be *apparently* good, and of a kind calculated to induce belief in the possessor that it is perfect."

[4] A title, defective in point of form, cannot be a basis for prescription. By this, the law means *a title on the face of which some defect appears*, and *not one* that may be proved defective *by circumstances, or evidence dehors the instrument*."

Moses Eastman v. Jacob Beiller, 3 Rob. 220; Carrel's Heirs v. Cabaret, 7 Mart. (O. S.) 403; Fort v. Metayer, 10 Mart. (O. S.) 436; Frique v. Hopkins, 4 Mart. (N. S.) 213; Morand's Heirs v. Mayor, etc., of New Or-

leans, 5 La. 240.; Reeves v. Towles, 10 La. 276; Avery v. Allain, 11 Rob. 436; Read v. Hewitt, 45 So. 143, 120 La. 291.

The sale from Boyet to William B. Parham, of date January 24, 1881, is made by Boyet in his individual capacity, with full warranty of title, for a consideration of $250, and shows no defect upon its face.

[5] The sale from Miss Sissie Parham to defendant, of date December 31, 1904, is made with full warranty of title, for a cash consideration of $200, and is without apparent defect. Two of the essential elements of prescription are:

"(1) Good faith on the part of the possessor. (2) A title which shall be legal, and sufficient to transfer the property." R. C. C. art. 3479.

"Good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor, must prove it." R. C. C. art. 3481.

"The possessor in good faith is he who has just reason to believe himself the master of the thing which he possesses, altlhough he may not be in fact, as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another." R. C. C. art. 3451.

"By the term *just title*, in case of prescription, we do not understand that which the possessor may have derived from the true owner, for then no true prescription would be necessary, but a title which the possessor may have received from any person whom he honestly believed to be the real owner, provided the title were such as to transfer the ownership." R. C. C. art. 3484.

"And in this case, by the phrase *transfer of the ownership of the property*, we understand not such a title as shall have really transferred the ownership of the property, but a title which by its nature would have been sufficient to transfer the ownership of the property, provided it had been derived from the real owners, such as a sale, exchange, legacy or donation." R. C. C. art. 3485.

[6] As the testimony in this case shows clearly that defendant had been in the actual, continuous, and uninterrupted possession of this property, for more than 10 years prior to the institution of this suit, as a purchaser in good faith, under a title translative of property and without defect upon its face, it necessarily follows that the plea of prescription must prevail and be maintained.

Plaintiffs rely, however, upon the decision of this court in Lewis v. King, 103 So. 19, 157 La. 718, in which it is held that a person, holding a deed which is a nullity, cannot convey to a purchaser in good faith a title which can form the basis for a plea of prescription of 10 years' acquirendi causa.

It is said in the Lewis Case that:

"The record discloses that the alleged transfer of the property from P. D. Mitchell to G. W. Mitchell and Mrs. S. J. Minor *was unauthorized, in bad faith on the part of the vendees,* and was an absolute *nullity.* Therefore the alleged deed transferred nothing to them. *For this reason* the deeds from *G. W. Mitchell* to *E. L. Watson,* from *E. L. Watson* to *W. W. King,* and from *G. W. Mitchell* to *Sid Jackson* were not deeds which were *translative* of property, and therefore *cannot form a basis* for the plea of prescription. C. C. arts. 3478 (3442), 503 (495), 3474 (3437), and authorities cited under these articles."

"It is averred that these several transfers were made *in good faith,* for a valid consideration, and by *titles translative of property* and that W. W. King and Sid Jackson have each had the actual physical possession of the property so acquired by them for more than ten years."

We have not been able to reconcile the holding in the Lewis Case with the textual provisions of the Civil Code and the decisions of this court. We are constrained, therefore, to overrule the Lewis Case in so far as it holds that a person holding under a deed which is a nullity cannot convey to a purchaser in good faith a title which can form the basis for a plea of prescription of 10 years' acquirendi causa.

John Chapman died October 25, 1879. All of the property of his estate was sold to pay debts due by his succession, including the N. E. ¼ of section 20, Tp. 18, R. 8, which is in controversy in this case. Plaintiffs allege that this particular tract constituted the separate private property of decedent.

The purchase price of the sale at public

auction of the N. E. ¼ of this section was paid by John Boyet, the adjudicatee, and accounted for by him as administrator to the seven heirs of John Chapman, including Elizabeth Heflin, the grandmother of plaintiffs.

The balance on hand was distributed between the heirs, as shown by the final account homologated in the succession proceedings.

Elizabeth Heflin not only purchased a part of the real estate at the succession sale, but instituted suit against the administrator for services alleged to have been rendered to John Chapman by her and Nancy J. Heflin, her minor daughter, who is the mother of plaintiffs.

Judgment was obtained against the succession of John Chapman in the sum of $150, with 5 per cent. per annum interest. The final account shows that this judgment was paid by the administrator.

It is alleged in the suit for these services that the testator, John Chapman, intended to pay the petitioner, Elizabeth Heflin, for services rendered by her and her minor daughter, Nancy J. Heflin, by the legacy of the property in dispute, made to them in his last will and testament, but "that said will by nuncupative act being witnessed by only *four* witnesses has never been probated."

[7] It is clear, therefore, that neither the mother nor the grandmother of plaintiffs acquired any interest in the property here involved under this will, which is null and void for want of form, as the law requires at least five witnesses to a nuncupative will by private act. C. C. art. 1581.

[8] It is also clear that neither the mother nor the grandmother of plaintiffs inherited any interest in this property as the legal heirs of John Chapman, as his entire estate was sold to pay debts.

Judgment affirmed.

BRUNOT, J., concurs in decree.