94 So.2d 417

Pearl Thomson BOUDREAUX et al.

v.

OLIN INDUSTRIES, Inc., et al.

No. 42196.

April 1, 1957.

Armand F. Rabun, Farmerville, for petitioners and appellants.

Shotwell & Brown, Monroe, for defendants-appellees.

McCALEB, Justice.

Defendant, Olin Industries, Inc.,[1] is owner of a large acreage of timber lands much of which is situated in the North or hill country of Louisiana and extends into Arkansas. Among the lands in North Louisiana is a 160-acre tract in Union Parish, being the SW¼ of the NE¼, NW¼ of the SE¼, NE¼ of the SW¼ and SE¼ of the NW¼ of Section 24, Township 20 North, Range 3 East. This property was acquired by defendant under warranty deed from Frost Lumber Industries on January 23, 1952. Frost Lumber Industries was the predecessor of Frost-Johnson Lumber Company, which acquired the tract by general warranty deed from Union Saw Mill Company on November 27, 1917. Union Saw Mill Company acquired an undivided ⅝ths interest in the property during 1910 by separate conveyances from the heirs of John Reeves Parks and Mary Elizabeth Parks, who held under patent from the United States Government. The remaining ¼th interest was acquired by Union Saw Mill Company in 1916 by purchase at sheriff's sale held pursuant to a partition by licitation invoked by Union.

Plaintiffs, Pearl Thomson Boudreaux, John Llewellyn Thomson and Mabel Thomson Smith, are the sole and only heirs of their mother, Linda Parks Thomson, one of the six children of John R. Parks and Mary Elizabeth Parks and formerly an owner of a ⅙th interest in the property. By act under private signature dated July

---

1. After the instant appeal was lodged in this Court, Olin Mathieson Chemical Corporation succeeded to all the rights of Olin Industries, Inc. and it has been substituted as party defendant in place and stead of Olin Industries.

3, 1910, Mrs. Linda Parks Thomson, under authorization by her husband, J. L. Thomson (father of plaintiffs herein), conveyed to Union Saw Mill Company her undivided ⅛th interest in the tract for the sum of $53.33, which was paid by draft drawn to her order, said draft being purportedly endorsed by the payee and her husband and accepted for payment at the Central Savings Bank & Trust Company in Monroe, Louisiana.

This suit, which was filed on June 18, 1952, assails the validity of the conveyance by plaintiff's mother in 1910 on the ground that the signatures of both their mother and father were forged and plaintiffs pray that the deed be declared null and void and they be recognized as the owners of an undivided ⅛th interest in the land.

Joined with Olin Industries, as defendant in the suit, was Union Saw Mill Company, allegedly a foreign corporation, which was cited through a curator ad hoc. In due course, these parties appeared and, after filing various exceptions including pleas of prescription of five, ten and thirty years, a plea of estoppel and special pleas of the ten and thirty year prescription acquirendi causa, which were referred to the merits, filed answer denying the charges of forgery. However, prior to the filing of the answer, considerable evidence was adduced by the litigants relative to the genuineness of the signatures of Mrs. Thomson and her husband on the questioned deed. Upon comple-

tion of this evidence but before judgment, defendant again filed in open court special pleas of ten and thirty year acquisitive prescription and, after hearing evidence on the pleas over the objection of plaintiffs' counsel, the judge sustained the plea of ten year prescription and dismissed the suit. Plaintiffs have appealed.

■ Although a scrutiny of the evidence touching upon plaintiffs' claim that their mother's signature to the 1910 deed is a forgery has left us with the distinct impression that they have fallen short of establishing a convincing case, it is unnecessary that we rest our decision on this issue of fact forasmuch as we, like the district judge, think it plain that defendant has acquired a valid title by the prescription of ten years provided for by Article 3478 of the Civil Code. Under Article 3479 of the Code, four conditions must concur in order to acquire the ownership of immovables by this species of prescription. Those conditions are (1) good faith on the part of the possessor; (2) a title translative of property; (3) possession during the time required by law and (4) an object which may be acquired by prescription.

In the case at bar, all of these requisites are present and, in our consideration of the plea, it is only essential that we examine the ownership of Frost Lumber Industries, defendant's immediate predecessor in title. Frost-Johnson Lumber Company, which

later became Frost Lumber Industries, acquired the tract on November 27, 1917 from Union Saw Mill Company under a general warranty deed. This acquisition was by title translative of the property and presumptively in good faith. Thereafter, in 1919, Frost-Johnson took corporeal possession of the land, which is high upland covered with merchantable timber, by general and complete cutting of timber thereon in connection with extensive cutting operations upon contiguous property owned by it. Approximately 24 to 28 sawyers were on the land as well as a number of teams and drivers; logs were hauled out of the woods to a railroad which was built on the timber land and traverses the tract in question. In addition to this extensive cutting occurring in 1919, there were other cuttings; a general selective pole cutting of all timber suitable for communication poles in 1935 and again in 1947, when Frost Lumber Industries undertook another general timber cutting operation.

Moreover, the corporeal possession of Frost Lumber Industries was made in conjunction with acts of civil possession which have continued since 1917. The boundaries of the property were marked, blazed and patrolled throughout the years.[2] In 1926 certain mineral rights were sold and rights-of-way were granted to Interstate Natural Gas Company, Inc. for the building of a pipeline through the property. Other rights-of-way were also given during Frost Industries' ownership. In 1917 pipeline rights-of-way were granted and two pipelines were actually laid; in 1931 the State acquired a right-of-way for the construction of a public road and in 1939 a power line right-of-way was given to Louisiana Power and Light Company. Defendants and their authors in title were the only ones assessed with and the only ones to pay all taxes on the property for thirty years.

Notwithstanding these numerous manifestations of actual possession and ownership, counsel for plaintiff argues that no one act or the sum total of them justifies a holding that a valid prescriptive title has been acquired.

■ Counsel initially contends that the judge should not have received evidence on the plea of prescription after a trial on the merits of the case had been completed as this was contrary to established rules of pleading and procedure.

The point is without merit. Article 3464 of the Civil Code declares that prescription may be pleaded in every stage of a cause "even on appeal, but it ought to be pleaded

2. Since Frost Lumber Industries were owners of adjacent lands in some instances no attempt was made by it to enclose the tract in suit by boundary markings. However, the external bound-aries of its land in which this tract was situated were fully marked and patrolled where its property fronted on lands owned by others.

expressly and specially before the final judgment". The judge's action was compatible with the codal article.

■ Counsel next contends that, since plaintiffs charged forgery of their mother's signature, the property could not be acquired by prescription as a forged deed cannot form the basis of a just title. The cases of Whitney Nat. Bank of New Orleans v. Schwob, 203 La. 175, 13 So.2d 782 and Pitre v. Peltier, 227 La. 478, 79 So.2d 746 are cited in support of this proposition.

This argument is, of course, predicated on the assumption that the 1910 deed to Union Saw Mill Company is a forgery, a matter about which we entertain serious doubt. But conceding, for purposes of discussion, that such is the case and that the title acquired by Union Saw Mill Company is absolutely null, this circumstance does not affect the validity of defendant's prescriptive title. The Schwob and Peltier cases cited by counsel are not authority for the proposition invoked by him as those cases dealt only with the liberative prescription. And, while our recent decision in Hicks v. Hughes, 223 La. 290, 65 So.2d 603, supports the view that an absolutely null deed cannot form the basis for the acquisitive prescription of ten years by the vendee,[3] that authority is not apposite here for the reason that defendant is not depending upon the deed from Mrs. Thomson to Union Saw Mill Company for its prescriptive title but, rather, upon the 1917 deed from Union Saw Mill Company to Frost-Johnson Lumber Company. The fact that we are assuming that the title of Union Saw Mill Company was absolutely null, and that that company could never use its title as a basis for prescription, does not affect the prescribable right of the transferees of Union Saw Mill Company. Indeed, it was expressly held in Clayton v. Rickerson, 160 La. 771, 107 So. 569, that a person holding under a deed, although absolutely null when the property was transferred to its vendor, could nevertheless acquire a valid prescriptive title if the title under which he possesses is one that is genuine on its face and translative of the property.[4] See also Zahn v. Arensberg, 154 La. 70, 97 So. 301 and Nethery v. Louisiana Central Lumber Co., 175 La. 753, 144 So. 486.

■ Finally, counsel for plaintiffs asserts that defendant and its authors in title

---

3. See also McCluskey v. Webb, 4 Rob. 201 and Buillard v. Davis, 185 La. 255, 169 So. 78, wherein a similar view is expressed.

4. In that case the court specifically overruled its prior decision in Lewis v. King, 157 La. 718, 103 So. 19, wherein it had been held that a person holding a deed, which is a nullity, cannot convey to a purchaser in good faith a title which can form the basis for a plea of ten years acquisitive prescription.

did not preface their civil possession by corporeal possession requisite for a valid ten-year prescriptive title under Article 3487 of the Civil Code, see Haynes v. Hood, 173 La. 712, 138 So. 517 and Martel v. Hunt, 195 La. 701, 197 So. 402, as the timber cutting operations of Frost Lumber Industries did not constitute actual or physical possession of the land.

This contention is also without merit. It is well settled that the corporeal possession necessary to support the ten-year prescription is governed by the use for which the land is destined. Chamberlain v. Abadie, 48 La.Ann. 587, 19 So. 574; Snelling v. Adair, 196 La. 624, 199 So. 782 and Veltin v. Haas, 207 La. 650, 21 So.2d 862 and the many authorities reviewed therein. The land involved in this suit, as we have above stated, is high upland timber land. The tract is now and has been used primarily for the purpose of growing timber and no other cultivation or habitation has ever been attempted. Under such circumstances, it is clear that use of the land by a general cutting of the timber followed by acts of civil possession are to be regarded as sufficient in law to supply a proper foundation for the prescription acquirendi causa. See Zylks v. Kaempfler, 189 La. 609, 180 So. 425.

The judgment appealed from is amended so as to run in favor of Olin Mathieson Chemical Corporation and, as thus amended, it is affirmed at plaintiffs' costs.