MARVIN, Judge.
In dispute here is the ownership of an 83-acre strip of land lying between property owned by the Hunter defendants (known as Oak Ridge Plantation, the ownership of which is not contested) and the Soda Lake Canal north of Shreveport in Township 19 North, Range 15 West, Caddo Parish.[1]
Hunter prevailed in an earlier possessory action against the Levee District and this court affirmed Hunter’s being maintained in possession of the disputed acreage. S. D. Hunter Foundation, et al. v. Board of Commissioners of the Caddo Levee District, 286 So.2d 525 (La.App. 2d Cir. 1973). The Levee District then brought this petitory action, claiming ownership of the acreage lying between the government meander line (or traverse line) of Soda Lake and the canal or bayou as lands granted by Congress to the State under the Swamp Land Grant Act of 1850, 43 U.S.C. § 982, and conveyed to the Levee District.
The Hunter defendants claim title to the disputed acreage by the acquisitive prescription of ten years and of 30 years.
This reproduction of details, roughly to scale from plats and surveys in the record, depicts the geographical situation:

*722

*723 In written reasons for judgment, the lower court (1) rejected defendants’ claims of ten year prescription acquirendi causa (finding no “good faith”); and (2) found that even though it could be said that defendants had proved requisite acts of possession of more than 30 years, an acquisitive prescriptive title had not accrued because one or more acts of the Louisiana Legislature effectively interrupted the accrual of prescription against levee districts.[2]
The Hunter defendants appeal from the judgment below which recognized title in the Levee District and rejected defendants’ demands for recognition of title by acquisitive prescription. We reverse.
The 1850 Swamp Land Grant Act allowed states to select and take title to swamp and overflowed lands of the United States. By Legislative Acts,[3] the State selected and accepted title to certain lands in Caddo Parish, including the disputed tracts. In 1901, the State conveyed title to the plaintiff Levee District. The traverse line shown on the above reproduction was established in the original government survey of the area before 1850 and was used as the boundary of tracts in this area selected under the Swamp Land Grant Act.
No contention is made here that Soda Lake was navigable in 1812. See Shell Oil Co. v. Bd. of Com’rs of Pontchartrain Dist., 336 So.2d 248 (La.App. 1st Cir. 1976) for issues arising in cases of navigable lakes.
The Levee District’s title satisfies the holding of Pure Oil Co. v. Skinner, 294 So.2d 797 (La.App.1974) and shall prevail unless defendants’ claims of prescription ac-quirendi causa are recognized. C.C.P. Arts. 3651, 3653.
A levee district, even though an agency of the state, has not always been immune from the plea of acquisitive prescription. Until Act 76 of 1938 (repealed by Act 247 of 1944), the plea was available against a levee district. Haas v. Board of Commissioners of Red River, etc., 206 La. 378, 19 So.2d 173 (1944); C.C. Art. 3521.[4]
Sam D. Hunter (ancestor and predecessor in title of defendants) acquired the Powell tract in October, 1948, and the George tract in November, 1951. The Powell tract is so named because for many years (dating from 1866) property in section 13 and 14 was acquired and farmed by the ancestor or predecessor in title of James C. Powell, who sold the property to Frank Hemenway, Jr. in 1946 for $48,000. Hemenway sold the property in 1948 to Hunter for $60,000. The deed to Hemenway and the deed to Hunter, as to warranty, prescriptive clauses and description of property conveyed are identical. Each deed reads in part:
“. . . SELL, CONVEY AND DELIVER, with full guarantee of title and with complete transfer and subrogation of all rights and actions of warranty against all former proprietors . . . , together with all rights of prescription, whether acquisitive or liberative, to which said vendor may be entitled . the following described property: “[lands in sections 13 and 14, said to contain approximately 635 acres],
*724 “The vendor furthermore transfers, assigns, conveys and delivers to vendee herein all lands owned or claimed by vendor, either legal or equitable, contiguous to the land hereinabove specifically described, whether the same be inside or outside the said specific description, or inside or outside of the sections, township or range hereinabove described, and whether the same be held under fence by vendor or not, and whether such lands be more or less than the estimated acreage herein conveyed of 635 acres.
“The property herein conveyed being more particularly shown delineated in red and yellow on plat attached to deed from James C. Powell to this vendor . . . ”
The property shown in red on the plat of survey attached to the Powell-Hemenway 1946 deed is the Oak Ridge Plantation property south of the government traverse or meander line which is specifically described in the deeds. The property shown in yellow on this survey (the shaded tract on the survey reproduction above) is the disputed Powell tract above the meander line in sections 13 and 14. The survey supplies description to the disputed Powell tract. Acadia-Vermilion Rice Irrigating Co. v. Miller, 178 La. 954, 152 So. 576 (1933); Gibson v. Johnson, 244 So.2d 713 (La.App. 2d Cir. 1971).
The preponderance of the evidence below establishes that fences perpendicular to the bayou (the easterly and westerly boundary of the shaded area in sections 13 and 14) existed before 1908 and have since been maintained in varying states of repair. An old fence similarly existed along the bank of the bayou, joined with the other fences immediately north of and roughly parallel to the meander line to enclose the shaded area with the Powell property (Oak Ridge Plantation) south of the meander line. Witnesses below who lived in the area from as early as 1893 until the trial were unequivocal in testifying that the shaded area (down to the bayou) and the several hundred acres to the south had always been known as Powell property until Hemenway and then Hunter acquired it. Earlier acts of possession included some farming (cotton and corn) on the disputed strip while more recent acts have been limited to the grazing of cattle. Johnson v. Merritt, 131 So.2d 562 (La.App. 2d Cir. 1961).
In written reasons for judgment, the lower court said:
“For purposes of discussion only, it can be stated that defendants [Hunter] proved possession of the disputed lands for a period considerably more than 30 years through the testimony of six witnesses who were well acquainted with the property in question.”
We agree, but without the qualification expressed by the lower court, and find that James C. Powell acquired as early as February 10, 1903, portions of the property now known as Oak Ridge Plantation in a partition with other heirs of James F. Powell, and that James C. Powell continued his ancestor’s earlier possession of the disputed shaded area [5] until he sold to Hemenway in 1946.
In the 1946 deed to Hemenway, Powell expressly conveyed his acquisitive prescriptive rights to the shaded area.[6] It is not contradicted that Hemenway and Hunter maintained possession of the shaded area from the time of their respective deeds.
Additionally, we find that Hunter meets the requisites of the ten year good faith *725 acquisitive prescription.[7] The lower court concluded Sam D. Hunter was not in good faith when he acquired the property from Hemenway in 1948 (1) because the deed to the disputed strip was conveyed without warranty; (2) because he also recorded with the Hemenway deed, a deed from the widow and only heir of James C. Powell he obtained about one week before he acquired from Hemenway, and (3) because of the holding in Board of Commissioners for the Lafourche Basin Levee District v. Elmer, 268 So.2d 274 (La.App. 4th Cir. 1972), writ refused.
Pertinent articles of the Civil Code read as follows:
“The possessor in good faith is he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact; as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another.” Art. 3451.
“Good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor, must prove it.” Art. 3481.
“It is sufficient if the possession has commenced in good faith; and if the possession should afterwards be held in bad faith, that shall not prevent the prescription.” Art. 3482.
The exclusion of warranty must be clear, express and unequivocal and any claim of exclusion of warranty will be strictly construed against him who claims it. The arrangement or structure of the 1948 deed from Hemenway to Hunter, in our opinion, cannot be construed even by implication to exclude warranty to the property outlined in yellow on the survey (the disputed Powell tract). C.C. Art. 2503. Hob’s Refrigeration and Air Conditioning, Inc. v. Poche, 304 So.2d 326 (La.1974). We do not view the 1948 deed from Hemenway to Hunter to exclude warranty.
Warranty of title, whether excluded or not, is not the test of good faith for the purposes of prescription acquirendi causa. Dupuy v. Joly, 197 La. 19, 200 So. 806, 810 (1941). In Elmer, at 268 So.2d 282, the court stated:
“We believe that a more complete approach in the case of a nonwarranty deed is that such a deed is not alone sufficient to preclude good faith on the past [sic] of the possessor (as held in the early cases), but must be considered with other evidence that the possessor doubted the validity of his title. A person ignorant of defects in his title is a good faith possessor. C.C. arts. 503, 3451, and a person who knows of defects in his title is a bad faith possessor, C.C. art. 3452. The determination must stand or fall on the facts and circumstances of each case.”
The fact that a purchaser acquires (or attempts to acquire) title from two or more people likewise does not of itself preclude good faith on the part of the buyer. Dupuy v. Joly, supra ; Reeves v. Towles, 10 La. 276 (1836). James C. Powell died with *726 in a few months before Hemenway sold the property to Sam D. Hunter. Hunter acquired' the quitclaim deed from Powell’s widow about the time he acquired the He-menway deed. One can only speculate why the quitclaim was acquired, but in any event, this fact is not sufficient to overcome the presumption of good faith.
The inquiry here is whether information was possessed by Sam D. Hunter when he purchased the property in 1948 which would have been sufficient to “excite inquiry” of what the public records would have revealed about the title to the property delineated in yellow on the survey attached to the deed of his vendor. Juneau v. Laborde, 219 La. 921, 54 So.2d 325 (1951); Bishop Homes, Inc. v. Derail, 336 So.2d 313 (La.App. 1st Cir. 1976). Sam D. Hunter is not shown to have sought a title examination before he purchased from Hemenway. The price he paid (approximately $250 per acre) was not a bargain-basement price for rural property in Caddo Parrish in 1948. The record is devoid of evidence on which it can be found or inferred that Sam D. Hunter possessed information which should have excited his inquiry into the title of the disputed strip. We find no factual basis to overcome the presumption of good faith. C.C. Art. 3481.
In Elmer, supra, the court found the absence of good faith in this summary:
“. . . the combination of a sale at a suspicious price by non-warranty deed, which recites the acquisition by tax sale and the fact of the vendor’s taking possession of the property immediately after the tax sale, should have instilled a doubt into the mind of a reasonable purchaser or excited inquiry as to the validity of his vendor’s title.” 268 So.2d 284.
None of these factors are present here. We can only conclude the good faith presumption has not been overcome and that the lower court’s reliance on Elmer, supra, was misplaced.
In Nugent v. Urania Lumber Company, 16 La.App. 73, 133 So. 420 (2d Cir. 1931), we said:
“It is contended that, because the deed from Mills to defendant expressly excepted from warranty the land here involved, it was not such a legal and transferable title of ownership to the defendant that would sustain a plea of prescription of ten years. This question has been forever settled by the Supreme Court of this state in a number of cases, and in the case of Land Development Co. of La. v. Schulz, 169 La. 1, 124 So. 125, 128, the court said: ‘The fact that the sale by Watts to Mrs. Schulz was made without warranty of title does not affect her plea of prescription of 10 years. A stipulation in an act of sale that the seller does not warrant the title might be regarded as an indication that the seller lacked faith in his title, but it is not an indication that the buyer lacked faith in the title’ — citing Templet v. Baker, 12 La.Ann. 658; Brewster v. Hewes, 113 La. 45, 36 So. 883; Read v. Hewitt, 120 La. 288, 45 So. 143; Kinchen v. Redmond, 156 La. 418, 100 So. 607; and Clayton v. Rickerson, 160 La. 771, 107 So. 569.
$ $ # >k # *
“Plaintiffs’ other contention is that defendant was not in good faith in taking deed to this property, basing their contention on the fact that the land in question was specially excepted from the warranty, and the further fact of defendant’s requiring the affidavit by Mills as to his possession and ownership, which affidavit is attached to the deed. The judge of the lower court upheld the contention of plaintiffs and held that the defendant was in bad faith, or at least put on its guard. We cannot agree with the lower court in this finding.
“ ‘Good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor, must prove it.’ Civ.Code, art. 3481.” 133 So. 420, 423.
The evidence is not sufficient, however, to support a finding of title by 30 year acquisitive prescription as to the disputed George tract. The several witnesses who testified regarding early possessory acts re *727 ferred almost exclusively to the disputed Powell tract. It was established that the disputed George tract was fenced and possessed as early as 1942 as a portion of the “George part” of the Oak Ridge Plantation. One witness testified that he farmed it in those days. Since Hunter’s acquisition in 1951, Hunter has maintained and improved fences surrounding the George tract and has grazed cattle on it. Johnson v. Merritt, supra.
For the same reasons and authorities mentioned as to the Powell tract, we hold defendants have acquired title to the George tract by the acquisitive prescription of ten years. The record is devoid of evidence to overcome the presumption of good faith afforded Hunter when he acquired the property in 1951.
Act 76 of 1938 was repealed by Act 247 of 1944. See footnote two. For twenty years afterward (until Act 408 of 1964) levee districts were subject to acquisitive prescription. The Act of 1938 which proscribed against acquisitive prescription of levee district property was held not to have been retroactive in Haas v. Board of Com’rs of Red River, etc., supra. Therefore, prior to 1938, prescription did accrue against levee districts. Prior to 1964, prescription did accrue against levee districts. Between 1944 ánd 1964 there was no proscription against the acquisitive prescription of levee district property. Before 1938 there was no proscription.
We have found the requisites of 30 year acquisitive prescription to have been met by James C. Powell before 1938 as to the Powell tract. We have further found the requisites of the 10 year good faith acquisitive prescription to have been met by Hunter, since 1948 as to the Powell tract, and since 1951 as to the George tract.
The right to claim title to the disputed Powell tract on the basis of 30 year acquisitive prescription arose in James C. Powell’s favor sometime before 1938. This right was thereafter conveyed to Hemenway and then to Hunter. The right to claim title to the disputed Powell tract on the basis of 10 year good faith acquisitive prescription arose in favor of Hunter and his successors in 1956. The right to claim title to the disputed George tract on the basis of 10 year good faith acquisitive prescription arose in favor of Hunter in 1961.
None of these parties renounced their rights to claim title by the respective acquisitive prescription. Instead, the possession as owner in each instance continued interrupted until the respective rights were exercised in this litigation. C.C. Arts. 3500, 3501, 3460, 3461. See also C.C. Arts. 3449 and 3517.
Haas, supra, expressly held the 1938 Act would not be applied retroactively to rights or prescriptive titles which accrued against a levee district before the passage of the Act. We believe Haas controls here, not only to the 30 year acquisitive prescription of the disputed Powell tract, but as to effect of the three Acts (1938, 1944 and 1964) as against the prescriptive rights or titles of defendants, whether 10 year good faith or the 30 year, acquisitive prescription.
The Levee District strongly urges that the passage of the 1938 Act “killed” any acquisitive prescriptive rights accruing or accrued against its property by way of a legal interruption. The lower court agreed. In Chapter 3, Title XXIII, of Book III of the Civil Code are found the Causes Which Interrupt, (Sec. 2, Par. 5) and the Causes Which Suspend, (Sec. 2, Par. 6), Prescription. We do not find the 1938 Act to fall within the purview of the Articles on interruption of prescription (3516-3520) and they shall not be extended by analogy or implication. Should we be required to pass on the contention of whether the 1938 Act suspended or interrupted prescription, we would be more inclined to categorize the Act as suspending, instead of interrupting, prescription because of the course the legislature has followed. The 1964 Legislature apparently considered that acquisitive prescription was running against levee districts between 1944 and 1964. Otherwise there would have been no need for R.S. 38:295. *728 While the intent, of the 1964 Legislature may not have been the same as the 1938 or the 1944 Legislatures, it is one small beam of enlightenment on what the intended effect was of the three Acts. Haas was decided in 1944 before the effective date of the 1944 repeal of the 1938 Act. We will not speculate as to what effect, if any, the 1944 repealing Act may have had on the Haas court. We hold simply that prescriptive titles or rights vested as we have indicated and that none of the three Acts will be given retroactive effect.
Other contentions relate to an apparent offer being made by Sam D. Hunter in 1952 to purchase property owned by the Caddo Levee District. Even should we construe this evidence most favorably to the Levee District, the offer arose after Hunter acquired and went into possession of both the Powell and the George tract. C.C. Art. 3482. We do not view this evidence as the Levee District would have us do. It was not shown that Hunter acknowledged title in the Levee District to the disputed tracts.
For the reasons given, IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of defendants, the S. D. Hunter Foundation and Mrs. Mil-ryn M. Hunter, and against the plaintiff, the Board of Commissioners of the Caddo Levee District, recognizing defendants’ title to and ownership of the following described property:
Two tracts of land forming a part of the Oak Ridge Plantation more particularly described as follows:
All that portion of Section 14 and the West Half of the Southwest Quarter of Section 13, Township 19 North, Range 15 West, bounded on the South and West by the Soda Lake Traverse Line and on the North and East by Twelve Mile Bayou also known as Soda Lake Canal, said property being delineated in yellow on plats annexed to a deed from Mrs. Mattie Bickham Powell to Sam D. Hunter, dated September 29,1948, and recorded in Conveyance Book 581, Page 304, bearing instrument No. 35399, and plat attached to deed from Frank Hemenway, Jr. to Sam D. Hunter, dated October 5, 1948, and recorded in Conveyance Book 581, Page 311 of the records of Caddo Parish, Louisiana, bearing instrument No. 35398, containing forty-six (46) acres more or less. Also a tract of land containing thirty-seven (37) acres more or less being that portion of the Northwest Quarter of Section 24, Township 19 North, Range 15 West, lying North and East of the Traverse Line of Soda Lake.
IT IS FURTHER ORDERED that all costs of these proceedings, including appellate costs, be paid by plaintiff.
REVERSED AND RENDERED.

. Soda Lake Canal is better known as Twelve Mile Bayou.

.Act 76 of 1938 provided in part:
“Prescription shall not run against any Levee District . . [Sec. 2]
“As to [all] such lands and all rights therein, no Levee District shall be divested of any property or property right by virtue of any prescription or adverse possession whatsoever. [Sec. 3]
“No court within the State of Louisiana shall have authority to apply, enforce or maintain against any Levee District any prescription acquirendi causa or liberandi causa. [Sec. 4]”
Act 247 of 1944 expressly repealed the above act, with this proviso, “. . . that nothing in this [repealing] act shall be construed to affect pending litigation.”
By Act 408 of 1964 (now R.S. 38:295), the Legislature declared that acquisitive prescription shall not run against any Levee District of the State.

. Act 74 of 1892; Act 90 of 1894.

. C.C. Art. 3521 provides: “Prescription runs against all persons unless they are included in some exception established by law.” See Acts quoted in footnote two.

. The “heirs of J. F. Powell” partitioned among themselves by several deeds in 1903 property in sections 13 and 14. J. C. Powell, by deed recorded February 10, 1903, in Conveyance Book 32, page 548, acquired the N/2 of NW/4 of SW/4 and SW/frac. 4 of NW/4 of Section 14. [sic]
C.C. Arts. 3493, 3494 and 3496 make it clear that the possession of an heir or buyer may be joined (“tacked”) to that of the possessor whether he acquired his right by universal or particular title.

. This satisfies the rule that tacking is recognized when there is privity of contract between possessor and his vendor(s) or predecessor(s). “Privity” denotes merely a succession of relationship to the same thing whether created by deed or other act or by operation of law. C.C. Art. 3499; Bunn v. A. J. Hodges Industries, Inc., 279 So.2d 268 (La.App. 2d Cir. 1973), writ denied.

. La. C.C. Arts. 3478, 3479. The latter article reads:
“To acquire the ownership of immovables by the species of prescription which forms the subject of the present paragraph, four conditions must concur:
“1. Good faith on the part of the possessor.
“2. A title which shall be legal, and sufficient to transfer the property.
“3. Possession during the time required by law, which possession must be accompanied by the incidents hereafter required.
“4. And finally an object which may be acquired by prescription.”
The incidents are found in C.C. Art. 3487:
“To enable one to plead the prescription treated of in this paragraph, it is necessary that the possession be distinguished by the following incidents:
“1. That the possessor shall have held the thing in fact and in right, as owner; when, however, it is only necessary to complete a possession already begun, the civil possession shall suffice, provided it has been preceded by the corporal possession.
“2. That the possession shall have been continuous and uninterrupted, peaceable, public and unequivocal; a clandestine possession would give no right to prescribe; but he who possesses by virtue of a title can not be considered as a clandestine possessor, for his title leads to the supposition that the possession commenced in good faith, and that is sufficient to enable him to plead prescription.”