The opinion of the court was delivered by
Watkins, J.
This is a petitory action, and the only question for the court to decide is, which has the better title to the property in dispute — the plaintiff or defendant.
The judge a quo gave judgment in favor of the plaintiff in respect to the property, rejecting his demand for reuts and revenues antecedent to the institution of the snit, and giving the defendant judgment against the plaintiff for the sum of one thousand three hundred and seven dollars and twenty-five cents on his reconventional demand for betterments, and allowing him to retain possession of the property until this allowance shall be paid.
From that judgment the defendant has appealed, and the plaintiff and appellee answers the appeal, and, denying that the defendant and appellant was a possessor in good faith, prays an amendment of the judgment appealed from, so as to condemn him to pay rents and revenues during the term of his possession.
*878 Inasmuch as the appellee, in his answer to the appeal, does not ask a revision of the judgment in respect to the amount allowed the defendant for improvements, it is fair to assume that he is contented therewith. Hence there are but two questions for us to deal with, namely: (1) title vel non in the plaintiff; (2) bad faith vel non in the defendant.
The plaintiff’s chain of title to the property in suit is as follows, viz.:
1. By a conveyance from John Arrowsmith to H. M. Hyams on the 7th of January, 1854.
2. By certain proceedings and judgment of the United States Circuit Court against H; M. Hyams, confiscating his property under the act of Congress of date August 6, 1861, and an adjudication by the Marshal of the United States to Jotham Potter on the 18th of May, 1865.
3. By a conveyance from Jotham Potter to H. M. Hyams on the 3d of February, 1866.
4. By a conveyance from H. M. Hyams of three-fourths undivided interest to his son, Isaac S. Hyams, on the 4th of May, 1866.
5. By a conveyance from Isaac S. Hyams to the plaintiff, 0.0. Beard, of said three-fourths interest, in act of partition and exchange of date June 4, 1870. And in his petition plaintiff alleges that he derived title “from Isaac S. Hyams by act of partition and exchange passed before E. Barnett, late notary, on the 4th of June, 1870 ” — the act last described.
The defendant’s title is derived through a judicial partition in kind amongst the heirs of H. M. Hyams, on the 3d of January, 1885 — the latter having died on the 25th of June, 1875 — and, in the partition, the lot containing the property in dispute was drawn by Ingram R. Hyams. And on the 20th of February, 1886, Ingram R. Hyams conveyed the property to the defendant.
The question for decision is, whether the plaintiff’s title from Isaac S. Hyams is better than the title the defendant derived from Ingram B. Hyams — both titles being derived from H. M. Hyams as a common author; and Isaac S. and Ingram R. Hyams being heirs of H. M. Hyams.
In the defendant’s answer it is alleged that Isaac S. Hyams never had any title to transfer to the plaintiff; and that, in consequence of the confiscation proceedings against H. M. Hyams, and the adjudica - *879 tion thereunder, “ there was not left to said H. M. Hyams any interest of any kind which he could convey as he did, but that the ownership of said property reverted to the heirs of H. M. Hyams at his death,” etc. The defendant’s counsel cites and relies on the following decisions of the Supreme Court as sustaining his view, viz.: Wallach vs. Van Riswick, 92 U. S. 202; Chaffraix vs. Shiff, 92 U. S. 214; Pike vs. Wassell, 94 U. S. 711; French vs. Wade, 102 U. S. 132; Avegno vs. Schmidt, 113 U. S. 293.
That such was the theory entertained by counsel who had charge of and conducted the proceedings in the partition of the H. M. Hyams property, there can be no doubt, as it appears from the face of the proceedings themselves; but the Supreme Court has expressed a different opinion, in a case more recently decided than either of the cases referred to — Jenkins vs. Collard, 145 U. S. 547.
That case, like the instant one, was an action of ejectment, brought by the heirs of Jenkins, the confiscatee, for the recovery of the property which was confiscated, and the life estate in which had ■been sold, and of which (property) the defendant, Collard, became the possessor, during the lifetime of the. confiscatee, plaintiffs alleging they had become seised of the legal estate in the premises by reason of the death of their father, and entitled to possession. The facts of that case seem to have been, that in 1863 all the estate of Jenkins was confiscated and sold to Bepler, who afterward conveyed to the defendant, Collard, to whom Jenkins subsequently made a formal deed of conveyance, on the 26th of August, 1865. On this state of facts, the Circuit Court held that only the technical life estate of Jenkins was confiscated by the decree of the court in 1863, “ but there was left in him the reversion or remainder which he sold and conveyed to the defendant, by deed of August 26,1865, and that consequently the plaintiffs had no interest in the property.”
The Supreme Court, in passing upon this question, examined and carefully reviewed all of their previous utterances in reference thereto, and announced their adherence to the doctrine, that a confiscation sale only disposed of the life estate of the confiscatee, but at the same time held that Jenkins’ deed to Collard, of August 26, 1865, operated as an estoppel against him, and all persons under him, from claiming title to the property sold as against the grantee and his heirs and assigns, or against his conveying it to other parties.
The court gave effect to the conveyance, made by the confiscatee *880 subsequent to the confiscation sale, and several years antecedent to the President’s amnesty proclamation, on the authority of Van Renssalaer vs. Kearny, 11 Howard, 297, and Irvine vs. Irvine, 9 Wallace, 617. That decision is exactly applicable to the case at bar — the purchaser at the confiscation sale having executed a reconveyance to the confiseatee, H. M. Hyams, soon after the adjudication, and H. M. Hyams having executed a conveyance to his son, Isaac S. Hyams, on 4th of May, 1866, prior to the amnesty proclamation. The following quotation from the opinion of the court in that case will be interesting and instructive, viz.:
“Of the reversion or remainder of the estate of the offending party no disposition was ever made by the government. It must therefore be construed to have remained in him, but, under the ruling in Wallach vs. Van Riswick, without any power in him to alienate it during his life. That disability was enforced when he (Jenkins) executed, with his wife, the deed of the premises August 26, 1865. The proclamation of pardon and amnesty was not made by the President until December 25, 1868. This deed, however, was accompanied with a covenant of seisin on his part, and that he would warrant and defend the title against the lawful claims of all persons whomsoever. Admitting that he had no present estate in the premises and none in expectancy, he was at liberty to add to his deed the ordinary covenants of seisin and warranty, and the same legal operation upon future acquired interests must be given to them, as when accompanying conveyances of parties whose property has never been subject to confiscation proceedings. “ That warranty estopped him and all persons claiming under him from asserting title to the premises against the grantee and his heirs and assigns, or conveying to any other parties. “ When, subsequently, the general amnesty and pardon proclamation was issued, the disability, if any, that had previously rested upon him against disposing of the remaining estate, which had not been confiscated, was removed, and he stood, with reference to that estate, precisely as though no confiscation proceedings had ever been had. “ The amnesty and pardon in removing the disability, if any, resting upon him respecting that estate, enlarged his estate, the benefit of which enured equally to his grantee. The removal of his disabilities did not affect the purchaser’s right under the decree of confiscation. The latter remained in the full enjoyment of the property during the life of the offending party, but he had no claim upon the *881 future estate, nor did the heirs of the offending party have any such claim upon it as to preclude the operation of any previous warranties by him respecting it.” (Our italics.)
We have italicized the portions of the opinion that have particular pertinence to the case before us — the deed from H. M. Hyams to Isaac S. Hyams, of date May 4, 1866, being prefaced with the declaration that the said vendor did “grant, bargain, sell and convey * * * with all legal warranties, and with substitution and subrogation to all his rights and actions of warranty,” etc.
Following the authority of that case — and it is unquestionably authoritative — the conclusion is clear that the warranty clause in the deed of H. M. Hyams to Isaac S. Hyams operated as an estoppel upon the heirs of H. M. Hyams — notwithstanding the fact the deed was executed antecedent to the President’s amnesty proclamation of December 25,1868 — and effectually bars their claim of title by inheritance, and likewise their assignee or vendee.
The subsequent general amnesty which relieved the coniiseatee of the disability that rested upon him, placed him in exactly the same position he would have occupied with reference to the property, had no confiscation proceedings been had; but the benefit of the relief enured equally to his vendee and those holding under him. So that, at the death of H. M. Hyams, his warranty title to Isaac S. Hyams operated against his heirs and their assigns and defeats recovery by either. Of all the cases the Supreme Oourt has decided, notone is so completely apposite to the case at bar as Jenkins vs. Oollard. The material distinction between that case and Railroad Company vs. Bosworth, 183 U. S. 92, is that the act of sale that Bosworth executed to the railroad company was dated in September, 1871 — several years after the issuance of the President’s amnesty proclamation; but the ease of Wallach vs. Van Riswiek, 92 U. S., is quite similar in principle to the instant one, in that the confiscatee became the purchaser at the confiscation sale in 1863, and made a conveyance to Van Riswick, the defendant, on the 3d of February, 1866. Of the title in that case the court said:
“It has been argued that the proclamation of amnesty, after the close of the war, restored to Charles S. Wallach his rights of property. The argument requires but a word in answer. Conceding that amnesty did restore what the United States held when the proclamation issued, it could not restore what the United States had ceased *882 to hold. It could not give back the property which had been sold, or any interest in it, either in possession or in expectancy. Semmes vs. United States, 91 U. S. 21. Besides, the proclamation of amnesty was not made until December 25, 1868.”
These three decisions are in line, and perfectly consistent, though dealing with different phases of the same subject. The conclusions at which we have arrived with regard to the effect of the conveyance from H. M. Hyams in 1866 render it unnecessary for us to give any extended examination into or discussion of, the intervention of H. M. Hyams in the act of sale from Isaac S. Hyams to the plaintiff on the 4th of June, 1870, for the purpose of relinquishing his rights of mortgage on the property sold. We may pass it with the simple statement that it has at least, the effect of confirming, after the removal of his disabilities, his contract of sale with warranty during their existence. With regard to the good faith of defendant, the following facts appear from the record, to-wit:
1. That he acquired the property by a deed that is translative of property on its face, and which contains nothing on its face that tends to show any imperfections in the title of his author, or any illegality in the proceedings through which he acquired it.
2. That previous to his accepting title he employed a lawyer to examine it, and the lawyer pronounced it perfect and complete.
3. That his vendor acquired title by and through a judicial partition regularly made and-duly homologated.
4. That under his deed he obtained possession, and has since retained it without question or complaint from any one, and has placed thereon valuable improvements.
We are of opinion that the principles of law announced on the subject of good faith in Montgomery vs. Whitfield, 41 An. 649, are strictly applicable, and bring this case under the operation of Arts. 503 and 3451 of the Civil Code.
The latter declares that “the possessor in good faith is he who has just reason to believe himself master of the thing which he possesses, although he may not be in fact, as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which in fact belongs to another.” The former declares that “ he is a bona fide possessor who possesses as owner, by virtue of an act sufficient in terms to transfer the property, the defects of which he was ignorant.”
It is quite apparent that the defendant had just reason to believe *883 himself master of the property that he had purchased and of which he ifras placed in possession, although he was not in fact. He certainly acquired it by virtue of an act sufficient in terms to transfer the property, the defects.of which he was ignorant. In Montgomery vs. Whitfield we said that Art. 503 “ does not convey and was not intended to convey the idea that the defects of title might be made known to (a purchaser) from extraneous sources previous to the acquisition of the property, and thus deprive him of his good faith at the commencement of his possession.”
The defendant’s title does not rest upon the judgment of a court that is void for want of jurisdiction, or for the lack of citation, as in case of Walworth vs. Stevenson, 24 An. 251, and authorities cited. Nor is the nullity of defendant’s title apparent from a simple inspection of it, as in Dohan vs. Murdock, 41 An. 494. We regard the defendant as a good faith possessor, and not bound for rents and revenues.
Judgment affirmed.
Rehearing refused.
Chief Justice Nicholls recuses himself, having been of counsel for some of the parties to the title in question.