O’NIELL, Chief Justice.
 

 Madame Amelie Yidrine Coreil, widow of L. M. Coreil, died at the age of ninety-one years, leaving two sons, Armand Coreil and J. Maurice Coreil, as her heirs at law. Armand Coreil was appointed administrator of the estate. When he filed his final account, several items listed as debts due to him personally were opposed by the First National Bank of Yille Platte, a creditor of the estate, and were rejected by the district judge. Armand Coreil, personally, has appealed from the judgment. The amounts which he claims the estate owes him, and which the district judge rejected, are: First, $910.95 for taxes alleged to have been paid by the appellant on the property of the de
 
 *571
 
 ceased, for the years 1925, 1926, 1927, 1928, and 1929; second, $4, alleged to have been paid by the appellant to a physician, Dr. H. O. Milburn, for professional services rendered to the deceased, and $123, alleged to have been paid by the appellant to an assistant nurse and cook for services rendered to the deceased; third, $1,035.24, alleged to be due to the appellant on an open account; fourth, $434.70, alleged to be due to the appellant as boot, or retour, resulting from an act of partition with Madame Coreil and J. Maurice Coreil, made on the 27th of April, 1928; and,’ fifth, $265, alleged to have been paid by the appellant for a marble slab placed on the grave of the deceased.
 

 The reason given by the district judge for rejecting the administrator’s claim for taxes alleged to have been paid by him, and his claim for bills alleged to have been paid to the doctor and the assistant nurse and cook, and the open account, was that these claims were not supported by any evidence other than the testimony of the administrator himself. The judge expressed the belief that Madame Coreil’s financial condition was such that she could have paid her debts promptly, and probably did pay them, and that whatever .Armand Coreil or J. Maurice Coreil paid for her account was paid with her funds. The want of more evidence than the testimony of the claimant himself was emphasized by the fact that Madame Coreil was too old and feeble to manage her own affairs during the last ten years or more of her life, and was a widow during the last eighteen years; all of her business transactions being conducted by her son, J. Maurice Coreil, in conference with Armand Coreil. J. Maurice Coreil testified for his brother, and on one occasion in the cross-examination he undertook to corroborate the testimony of his brother, to some extent, by saying: “The taxes that he paid were paid with his own-money.” But, in all other instances, the testimony of J. Maurice Coreil, as well as that of Armand Coreil, left the matter in much doubt as to whether any money other than that of Madame Coreil was used for paying her taxes.
 

 The attorneys for the First National Bank of Ville Platte, opposing the administrator’s account, invoke the provisions of Act No. 11 of 1926; the first section of which act provides that parol evidence shall be incompetent and inadmissible to prove any debt or liability on the part of a person deceased if a suit on the asserted indebtedness, or liability is brought more than twelve months after the death of the alleged debtor ; and the second section of which act provides-that parol evidence shall be incompetent and inadmissible to prove any such debt or liability, even though the suit be brought within the twelve months, unless the evidence consists of the testimony of at least one credible .witness of good moral character besides the-plaintiff, or unless it be to corroborate a written acknowledgment or promise to pay,, signed by the alleged debtor.
 

 The act of 1926 was not invoked by the attorneys for the bank until they argued the case. The attorneys for Armand Coreil therefore contend that the attorneys for the-bank waived the provisions of the statute by-failing to object to Armand Coreil’s testimony when it was offered. And his attorneys say that they would have offered evidence to corroborate his testimony if it had
 
 *573
 
 been objected to at the proper time. Our opinion is that the objection to the competency or sufficiency of the oral evidence was not waived by the failure of the bank’s attorneys to object to it when it was given. They could not control Armand Coreil’s attorneys with regard to the order in which they should introduce their evidence. Nor could the bank’s attorneys know, until the offering of evidence was finished, that Armand Coreil’s attorneys did not intend to offer evidence to corroborate his testimony. It was not the duty of the bank’s attorneys then to call attention to the fact that Armand Coreil’s testimony, as to some of his claims, stood uncorroborated. Objections having reference to the competency or effect or sufficiency of evidence are not waived by a failure to object when the evidence is tendered. Only such objections as relate to the relevancy of the evidence, or to some matter of form, or irregularity, in obtaining the evidence, aré waived if they are not urged when the evidence is tendered.
 

 It is argued for the appellant that Act No. 11 of 1926 would be unconstitutional if construed so as to render incompetent, as well as inadmissible, the uncorroborated testimony of a party setting up a claim against the estate of a deceased person, because, although the words “incompetent and inadmissible” are used in the text of the statute, the word incompetent, or incompeteney, is not used in the title of the act. It is true that the title of the act declares merely that it is “An Act to limit the admissibility of parol evidence to prove any debt or liability of a party deceased”; whereas, in the body of the act, it is declared that parol evidence to prove any such claim is “incompetent and inadmissible” if a suit on the claim be not brought within a year after the death of the alleged debtor, or if the testimony of the claimant be not corroborated by that of at least one other credible witness of good moral character, or if it be not corroborative of a written acknowledgment or promise to pay, signed by the alleged debtor. The expression “That parol evidence shall be incompetent and inadmissible,” except under the conditions specified, is merely a vigorous way of saying that such evidence shall be worthless under any condition other than the conditions specified. It was a sufficient compliance with the constitutional requirement that the title of the statute should be indicative of its object, for the title to contain the noun “admissibility,” having. reference to the more comprehensive of the two adjectives “incompetent and inadmissible.” The title of the act, therefore, sufficiently indicates the object or intention to forbid the proving of a debt or liability on the part of a person deceased by parol evidence, except under the conditions specified in the act.
 

 It is argued by the attorneys for the bank that the parol evidence in this case was rendered inadmissible by the failure of the administrator to assert his claims judicially, by filing either a provisional or final account, within a year after the death of Madame Coreil. In other words, it is contended that, when an administrator himself sets up a claim, personally, against the estate which he administers, his setting up the claim on a provisional or final account has the same effect, under the first section of Act No. 11 of 1926, ■ as the filing of a suit by any one
 
 *575
 
 else would have. We do not find it necessary to decide whether the parol evidence in this case was forbidden by the first section of the act of 1926; i. e., because the administrator’s account was not filed within the year after the death of Madaxne Ooreil. It is sufficient to say that the testimony of Armand Ooreil, to support his claims against the estate, was insufficient, or “incompetent and inadmissible,” according to the second section of the act, because it was neither corroborated by the testimony of another credible witness of good moral character, nor corroborative of a written acknowledgment, or promise to pay, signed by the alleged debt- or.
 

 The appellant’s claim of $434.70, for boot, or retour, resulting from the partition which was had between him and his mother on the 27th of April, 1928, is shown to be due to him by the act of partition itself; in which Madame Ooreil promised to pay the $434.70 to Armand Coreil, in order to equalize, or properly apportion, the division of property. The property that was divided belonged to the estate of L. M. Ooreil, deceased, husband of Madame Coreil, and father of Armand and of J. Maurice Coreil. The latter was a party to the act of partition but was left out of the division of the property because he owed the estate more than the value of his share of it. The only ground on which the bank opposed Armand Coreil’s claim of $434.70 boot, and the only reason given by the district judge for rejecting the claim, was the belief that this court had decided, in the case of Armand Coreil et al. v. Evangeline Bank & Trust Co., 170 La. 1007, 129 So. 618, 619, that the setting up of an indebtedness on the part of J. Maurice Coreil, in favor of his father’s estate, in the act of partition made on the 27th of April, 1928, was false and fraudulent. An examination of the opinion and decree rendered in that case, however, shows that we did not so decide. All that was decided was that the plaintiffs in that case, Madame Ooreil and Armand Coreil, were, by their representations to the Evangeline Bank & Trdst Company, estopped to set up, against a mortgage which J. Maurice Coreil had given to the hank, any claim due by him to his father’s estate. In maintaining the plea of estoppel, the court said, as to whether J. Maurice Coreil really owed the debt to his father’s estate, “But we do not find it necessary to pass upon this question.” The evidence in the case now before us shows that J. Maurice Coreil did owe the debt to his father’s estate, and, therefore, that Madame Coreil owed Armand Coreil the $434.70 boot, to equalize the division of the estate. The judgment appealed from, in that respect, must be reversed, to the extent of recognizing Armand Coreil to be an ordinary creditor of the estate of his mother, for the $434.70. He claims a vendor’s lien, as security for the debt, on the theory that an act of partition is of the character of an act of exchange and that an act of exchange is of the character of an act of sale. That is true in some respects, but an act of partition lacks the element of being translative of title, and hence does not create a vendor’s lien as security for the payment of a sum that may be due by one to another of the parties to the transaction, to equalize or properly apportion the division. Under the rule that statutes conferring liens must be construed strictly, Armand Ooreil is not entitled to a vendor’s lien to secure the payment
 
 *577
 
 of the $434.70 boot, resulting from the act of partition.
 

 The appellant’s claim for $265 for the marble slab placed, on his mother’s grave was approved by the judgment as originally rendered by the district judge; that is to say, the judge, in his decree, rejected the other claims which we have referred to, on the administrator’s account, and said: “In all other respects the account is approved.” But, within the delay allowed for the filing of a motion for a new trial, the attorneys for the bank filed the motion with reference to the claim of $265 for the marble slab; and the judge immediately granted the new trial, but, in his order for a new trial, he dispensed with the formality of a new trial, and immediately reversed his judgment by rejecting the claim for $265 for the marble slab. The judge declared, as his reason for so reversing his judgment, without waiting for a new trial, that-his failure to reject the claim of $265 in his original judgment was merely an inadvertence or oversight. Even so, the judge had no authority to reverse or amend his judgment to the prejudice of Armand Coreil without giving him an opportunity to be heard again, by way of a new trial. Article 548 of the Code of Practice declares that when a judgment is rendered it becomes the property of him in whose favor it is rendered and cannot be amended by the judge who rendered it, except in the mode provided by law; that is to say, by the granting of a new trial, according to article 546. Article 547 of the Code of Practice declares that the only purpose for which a judgment may be amended or revised by the judge who rendered it, without the granting of a new trial, is (1) to change the phraseology without altering the substance of the judgment, or (2) to correct an error of calculation, as, for instance, if the judgment gives the plaintiff more than he asked for, or if the party in whose favor the judgment is rendered is condemned to pay the costs.
 

 The amendment of the judgment in this case, by rejecting the claim of $265 for the marble slab, was a material change in the judgment as originally rendered, and, the amendment being made without the granting of a new trial, is null. The judgment originally rendered, in so far as it approves this claim of $265, was set aside by the granting of a new trial.
 

 The judgment appealed from is amended so as to allow the claim of Armand Coreil for $434.70 which Madame Coreil promised to pay him in the partition dated the 27th of April, 1928. With that exception, and except as to the rejection of Armand Coreil’s claim of $265 for the marble slab, the judgment apealed from is affirmed. As to the claim of $265 for the marble slab the case is ordered remanded for the new trial to be had. The costs of this appeal are to be borne by the estate of Madame Coreil.