## LONGINO v. LONGINO.

### No. 5264.

Court of Appeal of Louisiana. Second Circuit.

June 26, 1936.

Fred L. Jackson, of Homer, for appellant.

R. D. Watkins, of Minden, for appellee.

HAMITER, Judge.

Dr. Luther Longino, a resident of Webster parish, brings this suit on quantum meruit against the widow of his deceased brother, Augustus Longino, to recover judgment for the sum of $1,235.

For a cause of action, plaintiff alleges in substance that at various times between the dates of May 1, 1926 and October 10, 1934, he rendered professional services as a medical practitioner to his brother, who resided in Claiborne parish, for which he is due the above amount; that he made no demand for the payment of the account because the brother stated that he (Dr. Longino) was named as a legatee in his will, and also plaintiff did not consider such brother, in his physical and mental condition, as able to contract any business; that the will, when presented for probate, named defendant as the universal legatee, and she was thereafter put in possession by judgment of court of the entire estate; that she, by accepting the succession, assumed all of its debts, and is therefore liable for the above account.

Pleas of three-year prescription liberandi causa were urged by defendant in bar

of the alleged items for 1931 and prior years. These were sustained by the trial court.

Defendant then answered, generally denying the indebtedness.

After trial on the merits, plaintiff was granted judgment for $500, and defendant appealed devolutively and suspensively to this court. Plaintiff has answered the appeal, praying that the judgment be amended by increasing the amount awarded to that sought in the petition.

It might be said at the outset that there are numerous cases in the jurisprudence of this state in which recovery has been allowed to a person who performs valuable services for another, during a long period of time, in consideration of the promise of the beneficiary that remuneration for these services would be provided for in his will, and where such provision is not made as promised. Nimmo v. Walker, Executor, 14 La.Ann. 581; Succession of Mrs. Anna McNamara, 48 La.Ann. 45, 18 So. 908; Succession of Palmer, 137 La. 190, 68 So. 405, 407; and Succession of Oliver, 184 La. 26, 165 So. 318, 321.

The success of plaintiff's suit, therefore, is dependent upon the adequacy and sufficiency of the proof offered in support of the allegations in his petition.

The record discloses that plaintiff's brother died in the latter part of the year 1934, and that this suit was filed in the month of February of 1935, or within a delay of twelve months after such death. Because of this, and as there is no written proof of the existence and validity of the account involved, the evidence consisting entirely of parol testimony, it becomes necessary for us to first determine whether or not the requirements of section 2 of Act No. 11 of 1926, which pertain to the proving of a debt of a party deceased, have been fulfilled. Those provisions are as follows: "That parol evidence shall be incompetent and inadmissible to prove any debt or liability upon the part of a party deceased, if a suit upon the asserted indebtedness or liability shall have been brought within a delay of twelve (12) months after the death of the deceased, unless it consists of the testimony of at least one credible witness of good moral character, besides the plaintiff; or unless it be to corroborate a written acknowledgment or a promise to pay, signed by the debtor."

We have carefully and diligently studied the evidence in this case, and the only proof to be found tending to establish the asserted indebtedness is that given orally by plaintiff. The other witnesses testifying in his behalf, both of whom are doctors, did not in any manner refer to the account in question, but testified in the main regarding plaintiff's qualifications, that he was a practicing physician, and concerning charges usually made by physicians for services rendered. The defense witnesses told of plaintiff's visits during his brother's frequent periods of illness; however, they were very emphatic and positive that these were made by him in the capacity of a brother and as the closest relative in this state, and not as a practicing and attending physician.

It might be argued that defendant's attorney waived the provisions of the above legislative act by failing to object to plaintiff's testimony when it was offered. But this argument would be unavailing, for in the written opinion of Mr. Chief Justice O'Niell in the case of Succession of Coreil, 177 La. 568, 148 So. 711, 713, wherein was discussed a similar contention, it was said: "Objections having reference to the competency or effect or sufficiency of evidence are not waived by a failure to object when the evidence is tendered. Only such objections as relate to the relevancy of the evidence, or to some matter of form, or irregularity, in obtaining the evidence, are waived if they are not urged when the evidence is tendered."

Consequently, as no witness other than plaintiff has testified in favor of the existence of the alleged account for medical services rendered, and there being no written evidence to substantiate the claim, we must necessarily conclude and hold that plaintiff's suit fails because of noncompliance with the requirements of said act.

But, viewing the case in another light, and irrespective of the above referred to and discussed statutory provisions, we are of the opinion that the evidence with reference to the claimed indebtedness preponderates in defendant's favor. Although plaintiff testified generally that he attended and administered to his brother as a practicing physician and that he expected and was entitled to compensation for the services which he gave, his own

testimony regarding many of the details of his visits and the claimed medical acts performed not only does not benefit his cause, but is injurious to it. For example, under cross-examination, he testified:

"Q. Will you tell us one time without all of this wandering around,—one time what happened when he sought you specially as a doctor? A. Well, it was in 1932. When I don't know, but his wife called me.

"Q. Did he consult you? A. That particular time I don't think he did.

"Q. Then you don't know any one time, —you can't state to the Court this just one time, that he has sought you, any specific instance when he considered you as administering to him and as the best doctor that he could get? A. No, sir. I couldn't."

Again we find the following testimony of plaintiff concerning the medical attention given to his brother:

"Q. Did you have your medicine bag with you? A. No, sir.

"Q. Have you got one? A. Yes, sir.

"Q. You never did take it with you to see him? A. No, sir. I didn't attempt to give him medicine. I left that to the local doctors."

And in this connection it is well to note that plaintiff is neither a specialist nor a surgeon, but a general practitioner.

Opposed to the testimony of plaintiff that he actually rendered medical attention is that of several other reputable persons. The decedent was a patient in the Haynesville Sanitarium for several months in the year 1932, during which time he was in a precarious condition and underwent two serious and highly technical operations. For a similar period in the year 1934 he was again a patient there, and another operation was performed on him. His death resulted during this last siege of illness. Approximately $800 of plaintiff's total claim herein is for alleged services rendered during these two periods. The testimony of Dr. C. O. Wolf, who operated the sanitarium, Dr. T. L. Waller, decedent's regular family physician, Miss Mary Cameron and Mrs. Theo Bankston, nurses who attended him, and the defendant, is in accord and to the effect that plaintiff visited his brother solely in the capacity of a relative and not as an attending physician. It is true that plaintiff was called to the bedside of the decedent on several occasions by Dr. Wolf and the defendant herein, but in those instances the brother was in a most serious condition and was not expected to live, and the calls were made either for the purpose of obtaining, from the closest relative and only brother in this state, consent to operate, or because of the nearness of death. The evidence is conclusive that during those stays in the sanitarium the patient was solely under the care and supervision of Dr. Wolf and his associate, Dr. Rivenbark, and that no others could or would give any orders or administer for him.

Furthermore, the record contains uncontradicted testimony that it is not the common practice in the medical profession for a physician to make a charge for services rendered to his brother or to other members of his immediate family.

We are satisfied that plaintiff made numerous visits to his brother during his several periods of severe illness. This is amply sustained by the evidence. But we think that these trips were prompted by plaintiff's solicitousness for the welfare and health of his brother, and by the natural love and esteem, usually held by one for a kinsman of the degree in question, which he entertained for him. Plaintiff, at the time of trial, was 76 years of age, while his brother was several years his senior. Advanced ages such as these, as a general rule, tend to strengthen the ties of affection already existing between brothers of the same blood.

According to our view of the case, plaintiff has failed to establish his alleged claim, both as required by the provisions of the above-quoted statute and also in accordance with the general rules of evidence relating to burden of proof. And, by reason of this, a discussion of the pleas of prescription would be useless.

The judgment of the trial court appears to be manifestly erroneous, and, accordingly, it is reversed, and plaintiff's suit dismissed. Costs of both courts shall be paid by plaintiff.

DREW, J., recused.