McBRIDE, Judge.
The plaintiff, Nelson P. Barrois, and defendants, Roland A. Legendre and wife, own adjoining portions of ground situated in Square 109, McDonoghville, Jefferson Parish; the former claims a title to Lot 2 of said square and alleges the defendants have title to Lot 1 (or a portion of the original Lot 7). Plaintiff’s property is unfenced, unimproved, and it is not shown he has or ever had corporeal possession thereof. The defendants’ property is unenclosed but is improved, the improvements thereon consisting of a building. No sort of physical boundaries mark the respective ownerships.
Plaintiff instituted the present suit in order to obtain a judicial fixing of the boundary line, the petition alleging that defendants’ building encroaches on plaintiff’s property and takes therefrom and “encloses” a strip measuring ÍY3" wide, thus depriving plaintiff thereof. In view of plaintiff’s assertion of ownership of a certain portion of property which he alleges defendants have in their possession, coupled with the fact the titles of the parties are in conflict and overlap, plus the defense tendered by defendants and the issues presented to the trial court, we deem this not to be an action of boundary but one of a petitory nature. See Ganucheau v. Monnot, 130 La. 463, 58 So. 150; Thompson v. Futral, 18 La.App. 685, 136 So. 654.
In accordance with plaintiff’s prayer,- the court appointed a surveyor pursuant to the provisions of LSA-C.C. art. 833 et seq., who proceeded to locate the boundary line and ultimately reported his findings to the court *792 by submitting his plan and proces verbal, which after due trial were adopted by the court as a predicate for a judgment favorable to plaintiff. Defendants appeal.
The common ancestor in title of the respective parties was the Widow Medard, who on December 24, 1873 (C.B. “M” folio 657) sold Lot 2 to Francis Mellian, and on December 31, 1873 (C.B. “M” folio 659) sold Lot No. 1 to Ernest A. Hubeau, both sales being made with reference to a sketch of survey by R. W. Todd, U. S. Deputy Surveyor attached to each act. According to these sketches Square 109 is bounded by Franklin, Kepler, Solon and Monroe Streets, but it is perfectly clear the surveyor fell into error by transposing the locations of Kepler and Solon Streets, by placing the former where the latter should be and depicting the latter for the former. However, this error does not adversely affect the respective titles of the parties as their property can readily be identified, and hereinafter we shall refer to the location of the property as though the surveyor had correctly set out the two streets. Allowing for this correction, Lot 1, which Mrs. Medard conveyed to Hubeau, is described and shown on the survey attached to the act as forming the corner of Franklin and Kepler Streets and measuring 39'6" front on Franklin Street, by a depth and front on Kepler Street of 125. Lot 2 acquired by Mellian is described and shown on the sketch of survey as measuring 60' front on Franklin Street by 125' in depth, and a comparison of the two sketches of surveyor Webb shows Lots 1 and 2 as adjoining each other.
Through mesne conveyances Lot 2 passed into the ownership of plaintiff under descriptions almost identical to that contained in the sale by Mrs. Medard to Mellian. Plaintiff acquired Lot 2 on June 24, 1953, from Peterson (C.B. 340 folio 614).
As originally laid out the Town of Mc-Donoghville is shown on a plan made by a surveyor named J. V. Potier, on April 28, 1815, and according thereto Square 109 consisted of 12 lots numbered from 1 to 12, Lot No. 7 forming the corner of Franklin and Kepler Streets, and measuring 60' front on Franklin Street by a depth and front on Kepler Street of 120/. In a plan of resub-division of Square 109, dated December 23, 1873, Todd placed his Lot No. 1 (a part of the original Lot 7) at said corner and shows its measurements as 39'6" front on Franklin Street by a depth and front on Solon (Kepler) Street of 125'. On May 18, 1950, Clifford G. Webb, Surveyor, made a survey of the original Lot 7 of Square 109 and places the lot at the corner of Franklin and Kepler Streets, with a frontage on Franklin Street of 64', and a depth and front on Kepler Street of 128'.
Defendants contend they have a valid title to Lot 7 as it is shown on the original plan of McDonoghville by Potier and also on the survey by Webb, and if the contention advanced is correct, their ownership embraces a portion of Lot 2 as shown on the Todd survey, which plaintiff claims, said disputed portion consisting of a strip off of the side of Lot 2 nearest Kepler Street measuring 24' front on Franklin Street, by a depth of 128' between parallel lines.
As above set forth plaintiff’s title to Lot 2, without material variation in description of the property in any muniment thereof, can be traced back to the common ancestor in title, Mrs. Medard, but the defendants, are not in so fortunate a position as a glaring discrepancy appears in their chain of title.
Upon the death of Hubeau, who on December 31, 1873, had acquired Lot 1 which formed the corner of Franklin and Kepler Streets, with a frontage of 39’6" on Franklin Street, by a depth and front of 125’ on Kepler Street, as per Todd’s plan, the successions of said decedent and his wife were opened under the No. 888 of the late Twenty-eighth Judicial District Court, Parish of Jefferson, and by judgment therein rendered in 1908 (C.B. 27 folio 395), their child and sole heir was sent and placed into possession of half of Square 109 described as measuring 150’ on Franklin Street, the same- *793 frontage on Monroe Street, with a depth and front on Kepler Street of 30CK. This notwithstanding the fact said decedents had never acquired title to any property in Square 109 except Lot No. 1, forming the corner of Franklin and Kepler Streets, which Hubeau acquired from Mrs. Medard in 1873 in accordance with Todd’s survey.
In 1911 the Hubeau heir (C.B. 30 folio S69) sold to one Thomas Lot No. 7, Square 109, forming the corner of Franklin and Kepler Streets, the act reciting the lot measured 60' front on Franklin Street, by a depth and front on Kepler Street of 120''. Then through mesne conveyances title to Lot 7 so described and as shown on the Potier and Webb surveys, was transferred to defendants, their immediate author in title being Boudreaux (C.B. 309 folio 543) per act dated October 18, 1951.
The court appointed surveyor, Alvin E. Hotard, submitted his official plan of survey of Lots 1, 2 and 3 of Square 109, in accordance with the sketches of R. W. Todd made in December 1873, and of Lot No. 7 in accordance with the plan of J. V. Potier of April 28, 1815. He established the boundary between the property of the respective parties as beginning at a point on Franklin Street situated 40' from Kepler Street, thence running to the rear of the property at a point situated 40' from Kepler Street. In other words, Hotard allotted to defendants Lot 1 as it is shown on the Todd plan, i. e. as forming the corner of Franklin and Kepler Streets and measuring 39'6" title measurement (plus a 6" surplus) by a depth and front on Kepler Street of 125'. Hotard recognized plaintiff as the owner of all of the adjoining Lot 2 as it is shown on the Todd sketch with 60' front on Franklin Street, by a depth between parallel lines of 125'. The boundary line as established by Plotard runs through the building defendants maintain on their property.
The official surveyor was correct in so establishing the boundary insofar as the ownership of the respective parties can be traced back to the common ancestor. De-fendants could acquire no greater area by conventional title than Hubeau acquired from the common ancestor in title, Mrs. Medard, in 1873, that is to say Lot 1 as Todd showed it on his sketch.
Defendants seem to realize they have no titled to the whole of the original Lot 7 of Square 109, for in their answer they expressly plead that they have become the owners of the 24' strip (a part of original Lot 7) off plaintiff’s Lot 2 by reason of the acquisitive prescription of 10 and 30 years. They maintain they and their ancestors in title have had the actual, corporeal, unequivocal, continuous, uninterrupted and physical possession as owners in good faith under deeds translative of title of the whole of original Lot 7 of Square 109 for a period well in excess of 30 years and have paid all of the taxes on the property for all of said years. They allege that they and their ancestors in title have had actual, corporeal, unequivocal, continuous, uninterrupted, physical possession as owner in good faith since before 1911.
Defendants also allege that in proceedings No. 23,078 of the docket of the Twenty-fourth Judicial District Court for the Parish of Jefferson entitled Mrs. Rosie Cavaretta, wife of and Amzy W. McCloy v. Gilbert J. Boudreaux, a judgment was rendered and signed on February 28, 1950, “establishing” that Mr. and Mrs. McCloy owned the whole of Lot 7 of Square 109, McDonoghville.
The prayer of defendants is that plaintiff’s suit be dismissed and they be recognized as the owners of Lot 7, Square 109, McDonoghville, measuring 64' front on Franklin Street, by a depth and front on Kepler Street of 128'.
The defendants are not pleading the prescription provided by LSA-C.C. art. 852, under which an owner can prescribe property beyond his title or have more than it calls for provided it be by 30 years’ prescription or under LSA-C.C. art. 853, whereby a part of one’s property may be *794 acquired by an adverse possession of 10 years if the boundaries have been fixed according to a common title, or according to different titles, and an error has been committed in the surveyor’s measure. Defendants are contending that they and their ancestors in title purchased Lot 7, having a 60' frontage on Franklin Street, in good faith, by just title, and have had the undisturbed, corporeal possession of the property called for by their titles for more than 30 years and that their ownership thereof is unassailable in view of LSA-C.C. arts. 3474, 3475, and 3493, which respectively read as follows:
“Art. 3474. Immovables are prescribed for by ten years, when the possessor has been in good faith and held by a just title during that time.
“Art. 3475. Immovables are prescribed for by thirty years without any title on the part of the possessor, or whether he be in good faith or not.
“Art. 3493. The possessor is allowed to make the sum of possession necessary to prescribe, by adding to his own possession that of his author, in whatever manner he may have succeeded him, * * *.”
The defendants on the trial produced no witnesses to furnish testimonial proof of possession which could support their pleas of prescription, and the only testimony adduced by them tending to show any sort of possession of Lot 7 emanated from Roland A. Legendre, one of the defendants, who testified he “still” occupies and owns Lot 7, Square 109, and that he has paid the taxes “all the time.” It was agreed between counsel that if Mrs. Legendre, the other defendant, had taken the witness stand, she would have testified to the same effect.
Counsel for defendants offered and filed in evidence the record in suit No. 23,078 entitled Mrs. Rosie Cavaretta, wife of and Amzy W. McCloy v. Gilbert J. Boudreaux, and “particularly the judgment signed on February 28, 1950, for the information of the Court.” Immediately after the offer was made plaintiff’s counsel stated “no objection.”
Number 23,078 was a suit for specific performance, all parties thereto being authors in title of the instant defendants, Boudreaux being defendants’ immediate author. There was judgment in the suit rendered on February 28, 1950, in favor of the plaintiffs therein against their defendant, Boudreaux, ordering him to specifically perform his contract to purchase Lot 7, Square 109, title to which he had refused to accept on the ground plaintiffs’ asserted title thereto was not valid. In his reasons for the judgment the judge who decided the case stated he was convinced, in spite of possible defects in plaintiffs’ title urged by the defendant, that plaintiffs had a prescriptive title by proving that they and their ancestors in title have had the actual, corporeal, unequivocal, continuous, uninterrupted and physical possession as owners and in good faith under deeds transla-tive of title of Lot No. 7, Square 109, for a period well in excess of 30 years and have paid all of the taxes on the property through all of said years.
The judgment which defendants point to cannot have the force of res judi-cata as against the plaintiff herein for at least two reasons: first, the object of the suit and the cause of action were not the same as the demand herein, and, second, the instant plaintiff was not a party or privy to that suit. LSA — C.C. art. 2286 reads and provides as follows:
“The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality.”
*795 Counsel for defendants not only relies on the judgment but relies especially on the testimony of the witness in case No. 23,078 called by the plaintiffs therein, the transcription of which is to be found in the record of said case, it being argued that such testimony is ample to support and sustain the pleas of 10 and 30 years’ prescription made in the instant case.
In view of the statement of plaintiff’s counsel that he had no objection to the admission in evidence of the record in McCloy v. Boudreaux, the question is whether plaintiff is now in a position to register opposition to consideration by the court of the testimony contained in the record of said former suit.
The general rule is that testimony taken in a suit to which a litigant was not a party cannot be used against him, but it is not always necessary there be complete mutuality or identity of parties to admit testimony taken in a former suit. It generally suffices if the issue be the same and the party against whom the testimony is offered had full power of cross examination. But if the party did not have such power, the testimony is inadmissible. Williams v. Jahncke Service, Inc., 217 La. 1078, 48 So. 2d 93; Succession of Derigny, 128 La. 853, 55 So. 552; Morace v. Avoyelles Wholesale Grocery Co., Ltd., La.App., 39 So.2d 105; Young v. Reed, La.App., 192 So. 780.
However, in all the cases we can find where the evidence taken at a former trial was excluded when offered in a subsequent proceeding, the party against whom it was intended to be used made timely objection to its admission. In Edward F. Stockmeyer & Co. v. Weidner, 32 La.Ann. 106, the Supreme Court in its syllabi stated: “Evidence taken in another suit, between other parties, is not admissible if objected to.” And in the body of the opinion the Court observed:
“ * * * but that evidence consists of the testimony of witnesses taken in another suit, to which neither of the defendants were parties. The court manifestly erred in admitting it against the exception and objection of defendants. It cannot, therefore, be considered in this case. * * * ”
 A party may by his acts or omissions waive objection or be estopped from making objection to the admission or exclusion of evidence. Objections having reference to the competency or effect or sufficiency of the evidence are not waived by a failure to object when the evidence is tendered. But objections relating to the relevancy of the evidence or to some matter of form or irregularity in obtaining it are waived if they are not urged when the evidence is tendered. Hope v. Gordon, 186 La. 697, 173 So. 177; Succession of Coreil, 177 La. 568, 148 So. 711; Longino v. Longino, La.App., 169 So. 186; Farris v. Miller, La.App., 159 So. 132.
We are constrained to hold under the circumstances that by not objecting to the offer of the record in the former case and by affirmatively declaring there was “no objection” the plaintiff herein waived his right to object and is now effectively estopped from opposing consideration of the evidence contained therein.
Turning now to the testimony adduced on behalf of the plaintiffs in McCloy v. Boudreaux at the time of the trial thereof, on February 17, 1950, for the purpose of showing they at least had a prescriptive title to Lot 7 of Square 109, we find that one witness, then 53 years old, stated he had been a resident of McDonoghville all of his life and lived but three or four blocks away and knows there was a fence around the property in 1911 or 1912. This witness is the half-brother of Robert Thomas (one of defendants’ authors in title) who owned it and would go with him from time to time to inspect the property. He knows there was a house standing on the lot in 1922 or 1923 which had existed for a longer period than 10 years and consisted of a room and drop kitchen occupied by colored people.
*796 Another witness, 52 years old, who stated he was a lifetime resident of McDonogh-ville and lived hut two blocks away from the property in question, knew the property well because he visited his grandmother who lived next door. He testified there was a house on Lot 7 in the year 1908 and this dwelling was still standing in 1917 when he went into the military service and it was occupied by a couple named Virgets. He also remembered there was a fence around the property which antedated the house. On the date McCloy v. Boudreaux was tried Lot No. 7 was neither enclosed nor improved because the house spoken of by the two witnesses had been demolished at some previous time not disclosed by the record.
There was not one word of countervailing testimony offered against the evidence furnished by the plaintiffs’ witnesses.
We are unable to say, because neither record discloses it, when the present dwelling located upon Lot 7 was erected or by whom or for how long a period it has existed. However, the evidence does show that the present defendants and their authors in title have always paid taxes on the property.
The prescription of ten years ac-quirendi causa is based on good faith and just title and possession during that time. LSA-C.C. arts. 3474, 3478 and 3479.
We have examined the chain of title offered by defendants running back to the common ancestor and fail to find any defect or irregularity appearing in any of the muniments which would be sufficient to put the purchaser therein on notice that title to the property intended to be conveyed was in any wise defective or deficient. Nor has it been shown that the present owners or any former owner of the property had any knowledge or notice whatsoever that a defect existed in their respective titles.
There is no doubt that Robert Thomas, an author in title of defendants, who acquired Lot 7 in 1911 from the vendee of the Hu-beau heir had actual, physical, and open possession of the property from that year at least until 1922 or 1923, or for a longer time than 10 years, by maintaining a fence around the property and a building thereon, and each subsequent owner, namely Mc-Cloy, Boudreaux, and defendants have at least had civil possession.
He is a hona fide possessor who possesses as owner by virtue of an act sufficient in terms to transfer title, the defects of which he was ignorant of. LSA-C.C. art. 503. The possessor in good faith is he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact; as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another. LSA-C.C. art. 3451. Good faith is always presumed in matters of prescription. LSA-C.C. art. 3481. To be able to acquire by acquisitive prescription of 10 years, a legal and transferable title of ownership in the possessor is necessary; this is what is called in law a just title. LSA-C.C. art. 3483. By the term “just title” in cases of prescription, it is not understood that which the possessor may have derived from the true owner, for then no true prescription would be necessary, but a title which the possessor may have received from any person whom he honestly believed to be the real owner, provided the title were such as to transfer the ownership of the property. LSA-C.C. art. 3484.
LSA-C.C. art. 3487 provides:
“To enable one to plead the prescription treated of in this paragraph, it is necessary that the possession be distinguished by the following incidents :
“1. That the possessor shall have held the thing in fact and in right, as owner; when, however, it is only necessary to complete a possession already begun, the civil possession shall suffice, provided it has been preceded by the corporal possession.
*797 “2. That the possession shall have been continuous and uninterrupted, peaceable, public and unequivocal; a clandestine possession would give no right to prescribe; but he who possesses by virtue of a title can not be considered as a clandestine possessor, for his title leads to the supposition that the possession commenced in good faith, and that is sufficient to enable him to plead prescription.”
In Marks v. Collier, 216 La. 1, 43 So.2d 16, 17, the Supreme Court said:
“ * * * The possession of a portion of the land extends to the limits or boundaries set out in the title deed and this actual possession is preserved and maintained as though the property had always been physically possessed by the plaintiff. Articles 3437, 3442 and 3443, Revised Civil Code; Ellis v. Prevost, 19 La. 251; Duffourc v. Constantin, 189 La. 826, 181 So. 183; Lee v. Harris, 209 La. 730, 25 So.2d 448.”
According to LSA-C.C. art. 3493 the possessor is allowed to make the sum of possession necessary to prescribe by adding to his own possession that of his author in whatever manner he may have succeeded him.
Under the law and the evidence in this case defendants must be declared to be the owners of the lot in question, and whereas this action, under the issues and pleadings is petitory, no establishment of the boundary between the property of plaintiff and that of which the defendants are to be declared the owners may be made.
For the reasons assigned, the judgment appealed from herein is reversed in toto and it is now ordered, adjudged and decreed that defendants have judgment against plaintiff on the prayer of their answer decreeing them to be the owners of the area comprising what was original Lot 7 of Square 109, McDonoghville (now a part of the City of Gretna), as shown on the plan of J. V. Potier, dated April 28, 1815, and resurveyed by Clifford G. Webb on May 18, 1950, said lot forming the corner of Franklin and Kepler Streets and measuring 64' American measure (60' French measure) on Franklin Street, by a depth between paralleZ lines and front on Kepler Street of 128' American measure (120' French measure).
The demands of plaintiff are dismissed and he is cast for the costs of both courts.
Reversed.